**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Everton G. WILSON,
Defendant–Appellant.**

**No. 89–5001.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1989.

Decided Feb. 5, 1990.

Rehearing and Rehearing In Banc
Denied March 7, 1990.

Harvey Shepherd Williams, for defendant-appellant.

Bernard James Apperson, III (Henry E. Hudson, U.S. Atty., W. Neil Hammerstrom, Jr., Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before POWELL, Associate Justice, United States Supreme Court, Retired, sitting by designation, and MURNAGHAN and WILKINS, Circuit Judges.

PER CURIAM:

Everton Wilson was convicted in the United States District Court for the Eastern District of Virginia for possession with intent to distribute 50 grams or more of "crack" cocaine, a controlled substance. He has appealed the district court's conviction alleging that the district court erred by (1) admitting into evidence cocaine found on his person pursuant to a search conducted in violation of the fourth amendment, and (2) denying him a hearing to determine the voluntariness of a statement he made while in custodial interrogation.

I

On July 25, 1988, Wilson was observed by agent Peter Becerra—deputy sheriff for Loudoun County, Virginia, assigned to the DEA's Mass Transportation Detail—while arriving on a Pan Am Shuttle Flight from New York City, apparently a "drug source" city. As Becerra stared at Wilson, Wilson quickly looked away, looked back at the agent, again looked away, and acted "real nervous." Becerra decided to follow Wilson, who continued looking back at him.

Becerra, who was casually dressed, caught up with Wilson, identified himself,

and displayed his credentials; Wilson stopped. Becerra asked Wilson if he would talk with him; Wilson agreed. Becerra asked Wilson if he had a plane ticket and identification. Wilson did not produce a ticket but did produce an unofficial identification card in the name of David Wright. Becerra also inquired about Wilson's residence, the number of drinks he had on the plane, and the weather in New York. Becerra then told Wilson that he was with the DEA and was trying to stop the flow of narcotics coming into the Washington, D.C. area, and asked Wilson if he was carrying any drugs. Wilson said, "No." Becerra asked Wilson if he could look in his bag; Wilson replied, "Go ahead."

Becerra testified that while he was kneeling down, searching through Wilson's bag, he noticed a suspicious bulge in Wilson's groin area. He also testified that Wilson "appeared extremely nervous." Becerra asked Wilson if he could search his person, and, without making an oral response, Wilson simply shrugged his shoulders and extended his arms. Becerra felt a very hard substance in Wilson's groin area and asked Wilson about it; Wilson just nodded his head. At that time Becerra directed Wilson to the station for further investigation—Wilson was not, from that time on, free to leave. At the station, Becerra continued the body search and uncovered a large knife, a pager, and a package containing 131.5 gross grams of "crack" cocaine. Becerra read Wilson his *Miranda* rights.

Becerra asked Wilson if there was someone else involved and stated that maybe "they" could do something to help him. Wilson said that he was supposed to give the dope to a guy in front of the airport in a blue Lincoln Continental and then return to New York. Becerra asked Wilson if he personally used cocaine and Wilson said, "No." At trial, Wilson testified that he made up those statements in response to Becerra's promise of leniency.

At a hearing on defendant's motion to suppress the cocaine found on Wilson, the district court ruled that Becerra's stop of

Wilson was a permissible encounter and that Wilson consented to the body search. The court also ruled that, upon feeling the bulge in Wilson's groin, Becerra had probable cause to arrest Wilson.[1]

On October 24, 1988, Wilson was tried by a jury in the United States District Court for the Eastern District of Virginia and was convicted on one count of possession with intent to distribute 50 grams or more of crack, a controlled substance. He was sentenced to ten years imprisonment and five years supervised release.

## II

We are first called on to determine whether Becerra violated Wilson's fourth amendment rights when he stopped Wilson and searched his body. We conclude that Becerra did not act in contravention of the fourth amendment. Becerra's approach and questioning of Wilson constituted a permissible encounter, not a "seizure." Furthermore, Wilson raised his arms in response to Becerra's request for permission to pat him down, a request made without threats, force, or physical intimidation. It was not "clearly erroneous" for the district court to find that the search was consensual.

Wilson has argued that: (1) the initial stop constituted a seizure without the requisite "articulable suspicion," and (2) the pat-down search was nonconsensual and unjustified.

Although a "reasonable and articulable suspicion" is required prior to an investigatory detention, the requirement only applies if a "seizure" has occurred. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968), *quoted in United States v. Menden-*

---

1. Wilson does not challenge the legality of the arrest. Accordingly, we do not here address whether Becerra had probable cause to arrest Wilson.

*hall,* 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980).

■ The standard adopted by the Supreme Court to determine whether a "seizure" has occurred is an objective one—an individual is seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (quoting *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877). The agents' conduct must be measured according to the probable perspective of a reasonable person, not the subjective perception of the particular defendant.[2]

■ Wilson has agreed that when the agent first identified himself and asked to speak with him, the encounter did not implicate the Fourth Amendment. Wilson has nevertheless contended that the continued questioning of Wilson and the request to search Wilson's bag turned the encounter into an unjustified investigative detention. But a permissible encounter does not mature into a seizure when an otherwise consensual search occurs.

In *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), DEA agents approached the defendant in an airport, asked to speak with him, and asked for his ticket and identification. However, the agents did not return the defendant's ticket or identification, asked him to accompany them to a small room, and retrieved his luggage from the baggage department without his consent. *Id.* at 493–95, 103 S.Ct. at 1321–23. The Supreme Court held that "[w]hat had begun as a *consensual inquiry* in a public place had escalated into an investigatory procedure" without the requisite justification when the police took the suspect into a private interrogation room. *Id.* at 503, 103 S.Ct. at 1327 (emphasis added). If the police had not taken Royer into the private room and had not obtained his luggage without consent, the Supreme Court presumably would have upheld the approach of the suspect as a mere encounter.

The district court did not commit clear error in finding that the encounter between Becerra and Wilson was not a "seizure." *See United States v. Porter,* 738 F.2d 622, 625 (4th Cir.) (*en banc*) ("clearly erroneous" standard applied when determining if "seizure" occurred), *cert. denied,* 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984); *United States v. Gooding,* 695 F.2d 78, 82 (4th Cir.1982) (same).

Wilson has further argued that Becerra's pat-down search, which revealed the bulge in his groin, was nonconsensual. He has contended that the government must offer more evidence than acquiescence to a claim of lawful authority to support its search, particularly when the government has the burden of proving the necessary consent.

But according to the record, Becerra's search was not conducted pursuant to a claim of lawful authority. Becerra testified that he asked Wilson if he would mind if he searched his person. In *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), on the other hand, the police had told the defendant's grandmother that they possessed a search warrant and she had replied, "Come on in." *Id.* at 546–47, 88 S.Ct. at 1790–91. The Supreme Court held that the search could not be justified by consent; the burden of proving voluntary consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Id.* at 548–49, 88 S.Ct. at 1791–92.

Contrary to the "seizure" test, the determination of consent to search is subjective. The Supreme Court has stated that the question whether consent is in fact voluntary "is to be determined by the totality of all the circumstances, and is a matter which the Government has the burden of proving." *Mendenhall,* 446 U.S. at 557,

---

**2.** Recent Supreme Court precedent states that the circumstances of the encounter, in the absence of physical restraint, must be "so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave." *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (mere questioning does not constitute a seizure); *Chesternut,* 108 S.Ct. at 1980–81 (even though being followed by a police cruiser is somewhat intimidating, it is not a seizure unless a reasonable person would believe he could not leave).

100 S.Ct. at 1878 (citations omitted). In reviewing a district court's determination on consent, an appellate court must uphold the lower court's finding unless it is "clearly erroneous." *Mendenhall*, 446 U.S. at 558, 100 S.Ct. at 1879; *cf. United States v. Sutton*, 850 F.2d 1083, 1086 (5th Cir.1988) ("Where the judge bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses.").

In *Mendenhall*, after being approached by DEA agents in an airport, the defendant, who became "quite shaken" and "extremely nervous," was asked to accompany the agents to a private office for further questioning; asked if she would allow a search of her handbag though told she had a right to decline; and asked if she would consent to a strip-search. When the defendant removed her undergarments, two small packages of heroin were found. 446 U.S. at 547–49, 100 S.Ct. at 1873–75. The Supreme Court upheld the search as the product of the defendant's consent. Even though the defendant, a 22–year-old black female high-school dropout who was approached by two white male agents, acted against her own self-interest, the Supreme Court upheld the district court's finding that the search was consensual because it was supported by adequate evidence. The Court pointed out that the defendant was simply asked with no threats and no show of force. The Supreme Court also found it significant that the defendant had twice been told that she had the right to refuse. *Id.* at 558–59, 100 S.Ct. at 1879–80.

Wilson was not informed of his right to decline the search, a factor highly relevant in *Mendenhall*. But the absence of that factor alone is not dispositive; as the Supreme Court stated, "the Constitution does not require 'proof of knowledge of a right to refuse as the *sine qua non* of an effective consent to a search.'" *Mendenhall*, 446 U.S. at 558, 100 S.Ct. at 1879 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 234, 93 S.Ct. 2041, 2051, 36 L.Ed.2d 854 (1973)).

Becerra testified that, after he asked Wilson if he could pat him down, Wilson responded by shrugging his shoulders and raising his arms. Becerra was in plain clothes, made no threats, displayed no weapons, and asked to search Wilson in public. The record contains sufficient evidence to support the district court's finding that Wilson consented to the pat-down search. *See United States v. Corbitt*, 675 F.2d 626, 629 (4th Cir.1982).

### III

■ Wilson has also contested the admission of an incriminating statement he made while in custody on the grounds that he was not accorded a hearing, out of the presence of the jury, on the issue of voluntariness. We conclude that the district court did not abuse its discretion in denying Wilson relief from a waiver of the right to have a voluntariness hearing when Wilson failed to show cause for not raising the issue in a timely fashion.

Wilson has argued that the statement about giving drugs to someone in a blue Lincoln was made pursuant to a promise of leniency and thus was involuntary. By failing to hold the hearing, Wilson has asserted that he was forced to take the stand at trial in order to testify as to the conditions that made the statement involuntary; therefore, he has sought to establish that his fifth amendment rights were violated.

However, the motion to determine the voluntariness of the incriminating statements was not filed by Wilson until the day of trial. Wilson did not offer any reason, either in the motion or at the bench, why the court should grant relief from his waiver pursuant to Federal Rule of Criminal Procedure 12(f) (court "for cause shown" may grant relief). Judge Bryan denied the motion, stating that he was not willing to have still another pretrial hearing. The district court informed Wilson that any issue of voluntariness would have to be presented to the jury.

18 U.S.C. § 3501 (1982) requires the determination of the voluntariness of incriminating statements. "Before [a] confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness." *Id.* § 3501(a).

Courts have never interpreted the statute's provisions as imposing a duty on the district court *sua sponte* to raise the issue of voluntariness in the absence of a defendant's objections. *See, e.g., United States v. Badwan*, 624 F.2d 1228, 1232 (4th Cir. 1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); *United States v. Hart*, 729 F.2d 662, 666–67 (10th Cir. 1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985).

Rule 12 of the Federal Rules of Criminal Procedure provides that: "Failure by a party to raise defenses or objections or to make requests which must be made prior to trial [in a timely manner] shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." F.R.Crim.P. 12(f). Thus, the defendant has an obligation to raise issues by the date set by the judge. Notes of Advisory Committee on Rules, F.R.Crim.P. 12. The district court should grant relief only if there is a showing of cause for the noncompliance and a showing of resulting prejudice. 1 C. Wright, *Federal Practice and Procedure* § 193, at 698 n. 24 (1982) (citing *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977)). The standard of review of a district court's denial to grant relief from a waiver is that the district court's decision "is to be disturbed only for clear error." *United States v. Wertz*, 625 F.2d 1128, 1132 (4th Cir.), *cert. denied*, 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980).

In *Badwan*, we had occasion to apply the requirements of Rule 12(f) to the defendant's trial-day request for a hearing on the voluntariness of certain statements. The defendants had argued that an early trial date made it impossible for the defense to have prepared a suppression motion prior to trial. 624 F.2d at 1232. We upheld the district court's refusal to hold a hearing; nine days from the arraignment to the date for the submission of pre-trial motions was sufficient. *Id.*

Similarly, here, Wilson did not request a voluntariness hearing until the day of trial, even though almost one month prior the court held a hearing on defendant's motion to suppress other evidence. Unlike *Bad-wan*, Wilson offered no explanation regarding the untimeliness of his request.

Because Wilson failed to request the hearing in a timely fashion and did not show cause for the omission, the district court did not commit clear error. Furthermore, the evidence does not compel the conclusion that the statement was involuntary. Although Wilson testified that Becerra told him "if you help me catch that guy, well, I will make sure it go easy on you," Becerra testified differently. "I told him that if he cooperated, we would let the United States Attorney know whether he cooperated or not." It is true that a confession is involuntary if it is "extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976) (per curiam) (citations omitted). But "[g]overnment agents may initiate conversations on cooperation [and] promise to make a defendant's cooperation known to the prosecutor...." *See United States v. Shears*, 762 F.2d 397, 401–02 & nn. 2, 3 (4th Cir.1985), and cases cited therein. Unfortunately, Wilson waived his right to a more searching resolution of the issue, and holding him to the waiver was not improper.

The judgment is AFFIRMED.