935 F.2d 1288
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Sheldon TAYLOR, Defendant-Appellant.
 No. 90-5484.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1991.
Decided June 21, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-89-384-A)
 Thomas J. Harrigan, Duvall, Harrigan, Hale & Downey, Fairfax, Va., for appellant.
 John C. McMillan, Jr., Special Assistant United States Attorney, Alexandria, Va. (Argued), for appellee; Henry E. Hudson, United States Attorney, Gordon Dean Kromberg, Assistant United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and W. EARL BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Robert Sheldon Taylor was convicted by a jury of one count of possession with intent to distribute fifty grams or more of a mixture or substance containing cocaine base, commonly known as "crack," in violation of 21 U.S.C. Sec. 841(b)(1). Taylor was sentenced to 135 months imprisonment. He appeals his conviction and we affirm.
 
 
 2
 * On 1 November 1989, Taylor and a companion arrived at Washington National Airport on a shuttle flight from New York. Officer Douglas Crooke, who along with Officer Randy Yates was assigned to monitor flights from New York, noticed Taylor and his companion deplane, proceed up an escalator toward the airport's main terminal, and turn around and look down to the level where the officers were standing. Officer Crooke testified that Taylor's behavior gave him the impression Taylor was looking to see if he were being followed. The officers followed the two travelers and watched as they entered a candy shop, lingered therein without buying anything and then left the shop in the direction of the airport terminal exit. Before exiting the terminal, Officer Crooke approached Taylor, identified himself as a police officer, showed his identification, and asked to speak with Taylor for a moment. Taylor agreed.
 
 
 3
 Officer Crooke proceeded to ask Taylor why he had gone to New York and who he visited there. Taylor responded that he had been visiting relatives but could not provide their addresses or phone numbers. Officer Crooke noted that each time he asked Taylor a question, Taylor would pause a few seconds before responding. Officer Crooke also noted that Taylor was acting nervous, pacing about, and would not stand still.
 
 
 4
 When asked if he were carrying any narcotics, Taylor responded "no." According to Officer Crooke, when asked if he could search his bag, Taylor gave his consent. Taylor contends he did not consent. No contraband was found in the bag. Thereafter, Officer Crooke asked Taylor if he were carrying any drugs on his person. Taylor again responded in the negative and Officer Crooke asked if he could search him. Taylor gave his consent and raised his arms to the sides as if ready to be searched. Officer Crooke told Taylor that he did not need to raise his arms and proceeded to conduct a pat-down search. Officer Crooke noticed that Taylor's right foot looked swollen and he was able to feel a hard lump in the area of Taylor's right instep. Officer Crooke, knowing that drug couriers had recently been transporting drugs in their shoes, asked Taylor to remove his shoe, to which Taylor replied, "Why?" Officer Crooke told Taylor that he had felt a hard lump and wanted to see what it was. According to Officer Crooke, Taylor then turned and put his foot on the heating unit, untied his shoe and handed it to him. Taylor contends he was not asked to remove his shoe but instead was told to remove it. Officer Crooke took out the insole of the shoe and found a plastic bag containing what he suspected was cocaine. Taylor was then placed under arrest and told to remove his other shoe. Two more plastic bags of suspected cocaine were found in the other shoe. A more thorough search of the shoes at the police station yielded a fourth bag of suspected cocaine. Taylor contends that Officer Crooke ripped his shoe apart but the government contends the insoles in Taylor's shoes were of the type designed to be easily removed.
 
 
 5
 Taylor contested the issue of consent to search and moved to suppress the plastic bags of cocaine. The district court denied the motion to suppress finding that the search was conducted pursuant to Taylor's voluntary consent. At trial, a chemist testified that the four plastic bags contained 71.61 grams of cocaine base and Taylor was found guilty by a jury.
 
 
 6
 Taylor raises three issues on appeal: 1) He contends the officer's demand that Taylor remove his shoe exceeded the purview of the original consent and therefore amounted to arrest without probable cause; 2) He contends that the chemist who analyzed the drugs impermissibly altered or tampered with evidence by mixing the four bags of suspected cocaine; and, 3) He contends that it is error to have an indictment and final order recite a conviction for violation of 21 U.S.C. Sec. 841(b)(1)(A)(ii) when the evidence only supports a conviction for violation of Sec. 841(b)(1)(A)(iii).
 
 II
 
 7
 Taylor does not contend on appeal that the pat-down of his person was conducted without his consent. Taylor's argument is that the officer's demand that he remove his shoe exceeded the scope of the original consent and that the officer had no probable cause to take the insole out of the shoe.
 
 
 8
 Police officers, without possessing probable cause or a warrant, may nonetheless search an individual so long as they first obtain the individual's voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). The extent of the search conducted pursuant to the voluntary consent, however, must be limited to the terms of its authorization. United States v. Blake, 888 F.2d 795, 798 (11th Cir.1989). Whether consent to search is voluntary and whether the search conformed to any limitations placed upon it are "to be determined by the totality of all the circumstances." United States v. Mendenhall, 446 U.S. 544, 557 (1980); Blake, 888 F.2d at 798. The inquiry is subjective and the district court's findings may only be disturbed on appeal if they are clearly erroneous. United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990).
 
 
 9
 After conducting a suppression hearing, the district court stated in part:
 
 
 10
 [A]lthough there is a conflict in the evidence on it, I find there was a voluntary consent to be searched, both the bag and the person, and the person includes in my view the shoes when he found the lump in the shoes. If he needed probable cause, it occurred then. He certainly had the right to ask him to remove his shoes, which I find he did voluntarily.
 
 
 11
 The totality of the circumstances support the district court's finding that Taylor voluntarily consented to a search of his shoe. Taylor was approached in a public place and by a police officer who politely asked for permission to speak with him. No weapons were used and no attempt was made to physically block Taylor's departure or restrain his movement. When asked to remove his shoe, Taylor placed his foot on the heating unit, removed his shoe and gave it to Officer Crooke.
 
 
 12
 It is unnecessary to address the issue of whether Taylor's consent to the original pat-down search included authorization to search his shoe because the district court's finding that Taylor voluntarily consented to a separate search of his shoe is not clearly erroneous. See Wilson, 895 F.2d at 171-72. We also reject Taylor's argument that Officer Crooke needed and lacked probable cause to remove the insole inasmuch as voluntary consent to search a shoe certainly includes authorization to look underneath the insole.
 
 III
 
 13
 At trial, a chemist was called by the government to testify as to the chemical composition and weight of the substance seized from Taylor. The chemist testified that the four bags contained 102.3 grams of a mixture containing cocaine base. In order to analyze the substance, the chemist testified that he took the substance contained in the four bags, mixed it together, ground it up, and took approximately a one-half gram sample from the ground-up pile. He testified that 71.61 grams of the total material was cocaine base.
 
 
 14
 Taylor contends that under Federal Rule of Evidence 901(a) the material seized from him should not have been admitted into evidence at trial because the chemist impermissibly altered the material by mixing the four bags. Rule 901(a) provides that physical evidence, such as drugs, must be authenticated prior to its admission into evidence. Fed.R.Evid. 901(a). The purpose of this requirement is to establish that the item to be introduced is what the proponent purports it to be. Fed.R.Evid. 901(a); see United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir.), cert. denied, 459 U.S. 874 (1982). The ultimate question for the district court to decide is whether it is "improbable that the original item has either been exchanged with another or been contaminated or tampered with." McCormick on Evidence Sec. 212 (E. Cleary 3d ed. 1984). However, even a radically altered item may be admitted into evidence if its important features remain substantially the same. Id.; United States v. Albert, 595 F.2d 283, 290 (5th Cir.), cert. denied, 444 U.S. 963 (1979). The admissibility of drugs, including a decision on authentication, is within the sound discretion of the trial judge and may only be overturned if we find the judge abused his discretion. Howard-Arias, 679 F.2d at 363. We do not so find.
 
 
 15
 To be convicted of the crime charged, it need only have been proven beyond a reasonable doubt that Taylor possessed "50 grams or more of a mixture or substance" containing cocaine base. The chemist testified that "71.61 grams of that total material was cocaine base." It is irrelevant that the chemist mixed the four bags together because the important feature of the substance, the total number of grams of cocaine base, remained the same. Accordingly, we conclude the trial judge did not abuse his discretion in admitting the evidence.
 
 IV
 
 16
 Taylor contends that it is error to have an indictment and final order which recite a conviction for violation of 21 U.S.C. Sec. 841(b)(1)(A)(ii) when the evidence only supports a conviction for violation of 21 U.S.C. Sec. 841(b)(1)(A)(iii). Both the indictment and final order explicitly state the offense for which Taylor was tried and the elements thereof. There is no question that Taylor had notice of the charges against him. Therefore, the error in the citation of the statute in the indictment and final order is harmless in that the error "did not mislead the defendant to the defendant's prejudice." Fed.R.Crim.P. 7(c)(3). At the request of both parties, however, it is directed that the indictment and final order be corrected for the record to cite the correct statute, 21 U.S.C. Sec. 841(b)(1)(A)(iii).
 
 
 17
 AFFIRMED.