953 F.2d 640
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Clyde HEADEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Fitzgerald LUTHER, Defendant-Appellant.
 Nos. 90-5388, 91-5625.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 29, 1991.
Decided Jan. 28, 1992.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Chief District Judge. (CR-90-82-G)
 William C. Ingram, Jr., Floyd, Greeson, Allen & Jacobs, Greensboro, N.C., for appellant Headen.
 Walter T. Johnson, Jr., Barbee, Johnson & Glenn, Greensboro, N.C., for appellant Luther.
 Robert H. Edmunds, Jr., United States Attorney, Harry L. Hobgood, Assistant United States Attorney, Greensboro, N.C., for appellee.
 M.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 William Fitzgerald Luther and Kenneth Clyde Headen pled guilty to charges of possession of crack cocaine with intent to distribute. Prior to their plea, they filed separate motions to suppress evidence. The district court denied both motions; Luther and Headen appeal pursuant to Fed.R.Crim.P. 11(a)(2), contending that their initial stop by airport police, the warrantless search of Luther's person, and the warrantless seizure of an express mail receipt and package later found to contain crack cocaine were invalid. These cases have been consolidated for review. We find no merit in these claims and affirm the district court.
 
 
 2
 * On March 1, 1990, Chief Williams and Sergeant Overton of the Piedmont Triad Airport in Greensboro, North Carolina, were observing passengers deplane a flight from New York in connection with their investigation of two young black men by the names of Galloway and Waden. After spotting Galloway and Waden, Williams noticed two other young black men--Headen and Luther--deplaning some twenty feet behind the first duo. Luther and Headen were not carrying luggage and did not head toward the baggage claim area. Headen made eye contact with Williams as he passed and again glanced back at Williams as he and Luther walked through the concourse.
 
 
 3
 Williams followed Luther and Headen for a short distance, then approached them, identified himself as a police officer, and asked if he could speak with them. They agreed. When Williams asked to see their airline tickets, Headen produced two one-way tickets bearing the names of Reggie LeGrande and Tony Davis. Williams then asked for identification; Luther produced a driver's license bearing his correct name and Headen stated that he was not carrying identification, but falsely asserted that his name was Thomas Jeffrey Headen. Further questioning revealed that both young men were residents of North Carolina and that they had spent only one night in New York.
 
 
 4
 Williams then told Luther and Headen that he was conducting a narcotics investigation and asked if he could search them. Both agreed. Williams moved the group to a quieter area in the concourse and began searching Luther's coat pockets. During the course of that search, Williams discovered a small bag of marijuana, rolling papers, and an express mail receipt.
 
 
 5
 The express mail receipt identified a package addressed to Kenneth C. Headen. In response to questioning, Headen stated that the addressee identified on the receipt was his cousin and that the package contained a gift for his girlfriend. Soon thereafter, Headen picked up the express mail receipt and said that Williams could have it. Williams replied that if Headen didn't want the receipt he could throw it away. Headen then tossed the receipt to the floor. After a few seconds, Williams picked up the receipt and placed it in his pocket. Luther was silent throughout this exchange.
 
 
 6
 While these events were taking place, Overton was questioning Galloway and Waden. Waden asked to speak privately with Williams and, after receiving his Miranda[1] warnings, stated that Luther and Headen told him to "go up and get the dope." Headen denied this statement. Williams then asked Luther and Headen to accompany him to a downstairs office. Both agreed. Upon entering the office, Williams read Luther and Headen their Miranda rights. Williams once again asked Headen what the express mail package contained; Headen stated that the package contained some sneakers like those Headen was wearing.
 
 
 7
 DEA Agent Shelton arrived and conducted further conversations with Luther and Headen. During these conversations, Headen provided his true name. Luther and Headen were also placed under arrest by Shelton, but their arrests were withdrawn after Waden retracted his inculpatory statement. Shelton then contacted Postal Inspector Riddle, gave him the information from the face of the express mail receipt, and asked him to attempt to intercept the package before delivery. The package was successfully intercepted that afternoon and secured unopened in the DEA office. In the interim, Shelton had learned that Headen was under investigation for suspected drug distribution by Randolph County law enforcement officers.
 
 
 8
 Riddle assisted Shelton and Williams in the preparation of a search warrant affidavit. A search warrant was obtained and the express mail package was opened the following morning, revealing two bags containing several hundred grams of crack cocaine. Luther and Headen pled guilty and were sentenced for possession of crack cocaine with intent to distribute.
 
 II
 
 9
 Luther first challenges the alleged illegal stop in the airport concourse which set in motion the events leading to these convictions, arguing that probable cause was lacking. Because this stop was not a seizure, however, we need not consider whether probable cause was present.
 
 
 10
 A person is only seized within the meaning of the fourth amendment when the circumstances are such that a reasonable person would have believed that he or she was not free to leave. United States v. Gordon, 895 F.2d 932, 937 (4th Cir.1990); United States v. Alpert, 816 F.2d 958, 960 (4th Cir.1987). See also INS v. Delgado, 466 U.S. 210, 215 (1984); United States v. Mendenhall, 446 U.S. 544, 553 (1980) (plurality opinion). The fourth amendment is not violated when the police simply approach a person in a public place and ask that person to answer some questions. Florida v. Royer, 460 U.S. 491, 497 (1983).[2]
 
 
 11
 In this case, the manner in which Williams approached Luther and Headen can only be characterized as a "brief police-citizen encounter." Williams made no undue display of force; he simply identified himself and asked if he could speak with Luther and Headen. Both agreed. The district court correctly denied Luther's motion to suppress on the basis of the initial stop, as the initial stop did not constitute a seizure under currently applicable law.
 
 III
 
 12
 Luther next challenges the warrantless search of his person by Williams. The district court determined that the search was valid, based on Luther's voluntary consent.
 
 
 13
 The question of voluntariness of consent is a factual determination which must be upheld unless clearly erroneous. Gordon, 895 F.2d at 938; United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990); United States v. Peterson, 524 F.2d 167, 178 (4th Cir.1975). "The government need not demonstrate that the defendant knew of the right to refuse to consent for the search to be deemed a voluntary one." Gordon, 895 F.2d at 938. In Wilson, we held that the defendant's nonverbal consent was voluntary because the request to search was made "without threats, force, or physical intimidation." 895 F.2d at 172. See also Gordon, 895 F.2d at 938.
 
 
 14
 This case demands a like result. Williams's conduct was free from any threats or show of force. Although Luther asserts that Headen did most of the talking in response to Williams's questions, Williams testified at the suppression hearing that Luther gave express verbal consent to Williams's search request. Thus, the district court's finding that consent was voluntarily given is not clearly erroneous.
 
 IV
 
 15
 Luther next challenges the seizure of the express mail receipt found in his pocket. This challenge is without merit. As correctly noted by the district court, Luther abandoned the receipt when he failed to claim any interest in it during the lengthy discussion between Headen and Williams and the subsequent disposal of the receipt by Headen. A defendant cannot challenge the seizure of an object which he or she has abandoned. Abel v. United States, 362 U.S. 217, 241 (1960). See also United States v. Flowers, 912 F.2d 707, 711 (4th Cir.1990); United States v. Jackson, 544 F.2d 407, 409 (9th Cir.1976). Luther lacks standing to challenge the seizure of this receipt.
 
 V
 
 16
 Headen challenges the warrantless seizure of the express mail package, arguing that probable cause to seize the package did not exist because probable cause to arrest Headen and Luther had dissipated. Headen also argues that exigent circumstances were lacking.
 
 
 17
 The question of probable cause to search or seize an item is determined by reference to the totality of the circumstances. United States v. Sokolow, 490 U.S. 1 (1989). Probable cause to conduct a search exists when the facts and circumstances would lead a person of reasonable caution to believe that a crime has been committed. United States v. Laughman, 618 F.2d 1067, 1072 (4th Cir.1980).[3]
 
 
 18
 Probable cause was clearly present in this case. By the time Shelton contacted Riddle to request that the package be intercepted, he and Williams knew that Luther and Headen were flying with one-way tickets under assumed names, that they had arrived from a source city which they had visited for only one night, that Headen had no identification and had lied about his name, that the stories about what the package contained were inconsistent, that Headen was extremely anxious about the express mail receipt, and that Luther possessed marijuana. At some point during the course of the afternoon, Shelton also learned that Headen was under investigation by local officials for drug distribution. Taken together, this evidence was sufficient to establish probable cause.
 
 
 19
 Headen's insistence that exigent circumstances were lacking is likewise unavailing. Exigent circumstances sufficient to support a warrantless search are present when officers reasonably believe that the thing to be searched or seized contains contraband and that the contraband may be destroyed or removed before a search warrant is obtained. United States v. Turner, 650 F.2d 526, 528 (4th Cir.1981). Police officers are not required to produce concrete evidence that destruction or removal was imminent; "rather, the proper inquiry focuses on what an objective officer could reasonably believe." United States v. Grissett, 925 F.2d 776, 778 (4th Cir.1991).
 
 
 20
 In this case, Shelton and Williams were faced with the choice of either allowing the package to be delivered, thus risking destruction of its contents before a search warrant could be obtained, or seizing the package before delivery and holding it unopened until the search warrant issued. They chose the latter option. Given the easily disposable nature of drugs and the unknown propensities of the addressee, this choice was eminently reasonable. Headen's motion to suppress was appropriately denied.
 
 
 21
 We affirm the district court's judgment denying these motions to suppress evidence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 In Florida v. Bostick, 59 U.S.L.W. 4708 (U.S.1991), the Supreme Court extended this rule to validate searches and questioning of bus passengers
 
 
 [3]
 The fact that probable cause to arrest Luther and Headen may have dissipated is irrelevant to the search and seizure inquiry, because the probable cause test applicable to arrests differs in focus from the test applied when search and seizure is at issue. See W. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 3.1(b) at 544 (2d ed. 1987)