8 F.3d 821
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maurice KINARD, a/k/a Roger Tapscott, Defendant-Appellant.
 No. 93-5326.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: September 14, 1993.
Decided: October 21, 1993.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.
 George V. Laughrun, II, Goodman, Carr, Nixon, Laughrun & Levin, Charlotte, North Carolina, for Appellant.
 Jerry W. Miller, United States Attorney, Robert J. Conrad, Jr., Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before PHILLIPS, NIEMEYER, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Maurice Kinard pled guilty to possession with intent to distribute cocaine base, in violation of 21 U.S.C.A. § 841(a)(1) (West 1981). He reserved the right to appeal the district court's ruling denying his motion to suppress. We affirm.
 
 I.
 
 2
 Three Charlotte police officers, assigned to narcotics interdiction at the airport, observed Kinard deplane from a flight originating in New York City. Kinard was wearing loose blue jeans and a T-shirt and carrying only a gold sweat shirt. One officer observed a bulge in Kinard's crotch area, higher than "the normal male human anatomy." Kinard appeared to be hindered in his walking by the presence of this bulge. He frequently looked down at his crotch while walking, and glanced back at two officers, now following ten to fifteen feet behind him.
 
 
 3
 After following for some distance, Officers Kolbay and Faulkenberry approached Kinard, identified themselves as police officers, and asked to speak with him for a minute. The officers were in plain clothes and displayed no weapons. Kinard continued to walk during the initial part of the conversation, and the officers remained two to three feet away from him. Kolbay told Kinard he was not under arrest or in any trouble. He explained that they were in narcotics investigation, and asked to see Kinard's ticket. Kinard stopped, and produced a one-way ticket from New York to Greenville, North Carolina, in the name of Roger Tapscott, paid for with cash and purchased that day. Kolbay asked for identification, and Kinard produced a Pennsylvania I.D. also in the name of Roger Tapscott. Kinard had begun to sweat and his hands were shaking.
 
 
 4
 The officers returned the ticket and I.D. and asked Kinard if he had anything on him they should know about. Kinard replied, "not mine," and began to unbuckle his pants. Kolbay then asked if Kinard would consent to a search of his person and any luggage he might have. He stated that if Kinard was willing to consent, they did not mean to embarrass him and they all could move into a nearby restroom. As Kinard hesitated, Faulkenberry told him he could be searched right there if he wished. Kinard then moved toward the restroom, and the officers followed. In the restroom, Faulkenberry patted the bulge in Kinard's pants. He felt a hard object which he squeezed very hard. Kinard made no reaction. When asked what this was, Kinard replied, "my dick." Faulkenberry responded that this was impossible, placed Kinard under arrest, and removed three bags containing cocaine base from his underwear.
 
 II.
 
 5
 Kinard argues that the officers had no reasonable, articulable suspicion to justify the encounter described above. However, not every contact between police and the public constitutes a seizure under the Fourth Amendment. Police do not impinge on Fourth Amendment rights simply by approaching an individual in a public place and asking questions. Florida v. Royer, 460 U.S. 491, 497 (1983). A district court, in evaluating a claim of unconstitutional seizure, must look at all the circumstances surrounding the incident and determine if a reasonable person would have believed that he was not free to leave or to end the encounter. Michigan v. Chesternut, 486 U.S. 567, 573 (1988). We must uphold the lower court's determination on this issue unless we find it to be clearly erroneous. United States v. Clark, 891 F.2d 501, 514 (4th Cir. 1989).
 
 
 6
 In this case, two officers approached Kinard in a well-lit, public area, wearing casual clothes and displaying no weapons. They did not touch or block him, and spoke politely and conversationally. The officers informed him that this was a routine investigation, and he was not in trouble or under arrest. They promptly returned his ticket and identification. These factors all lead to the conclusion that Kinard was not seized. United States v. Gray, 883 F.2d 320, 322 (4th Cir. 1989). Moreover, the mere failure to inform Kinard that he was free to leave or terminate the conversation did not convert it into a seizure. INS v. Delgado, 466 U.S. 210, 216 (1984); United States v. Analla, 975 F.2d 119, 124 (4th Cir. 1992), cert. denied, 61 U.S.L.W. 3714 (U.S. 1993). Considering all the above factors, the district court was not clearly erroneous in finding this to be a permissible encounter not controlled by the Fourth Amendment.*
 
 
 7
 Accordingly, we affirm Kinard's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Kinard does not challenge the voluntariness of his consent to the subsequent search on appeal. Even if this Court were to review the propriety of the consent, we would conclude that the district court's finding that consent was voluntary is not clearly erroneous. United States v. Gordon, 895 F.2d 932, 938 (4th Cir.), cert. denied, 498 U.S. 846 (1984). See United States v. Wilson, 895 F.2d 168, 172 (4th Cir. 1990) (individual consented to request to allow pat down by shrugging and raising arms)