**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4486**

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JAMAAL ANTONIO ROBERTSON,

        Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Thomas D. Schroeder, District Judge; Catherine C. Eagles, District Judge. (1:11-cr-00296-CCE-1)

_____

Argued: September 20, 2013      Decided: December 3, 2013

_____

Before GREGORY and DUNCAN, Circuit Judges, and Samuel G. WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

_____

Reversed by published opinion. Judge Gregory wrote the majority opinion, in which Judge Duncan joined. Judge Wilson wrote a dissenting opinion.

_____

**ARGUED:** Ronald Cohen, Wilmington, North Carolina, for Appellant. Michael A. DeFranco, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

GREGORY, Circuit Judge:

This appeal stems from an interaction between Jamaal Robertson and Durham Police Officer Doug Welch in a bus shelter. Officer Welch had come to the neighborhood around the bus shelter in response to reports of a foot chase involving a gun. After some initial investigations, Officer Welch and a crew of police officers focused their response on a bus shelter containing six individuals. Among them was Jamaal Robertson. While several officers engaged the other bus shelter denizens, Officer Welch approached and eventually searched Mr. Robertson, who is a convicted felon and was carrying a firearm. Mr. Robertson pled guilty to violating 18 U.S.C. § 922(g)(1).

Mr. Robertson argues that he never consented to the police officer's search, rendering it presumptively unreasonable absent probable cause. We agree with Mr. Robertson. Because we find that in submitting to the search, Mr. Robertson merely obeyed the police officer's orders without giving valid consent, we reverse.

I.

Because this is a defendant's appeal from a motion to suppress, we construe the facts in the light most favorable to the government. United States v. Seidman, 156 F.3d 542, 547 (4th Cir. 1998).

2

On April 14, 2011, the Durham Police Department received a call reporting an altercation in MacDougald Terrace. The caller stated that three African-American males in white t-shirts were chasing an individual who was holding a firearm. Officer Doug Welch drove to the area in his patrol car. After arriving, he approached a group of people who were standing near where the foot chase was reported. The group was apparently uninvolved in the chase, however, and was unable to give Officer Welch any useful information.

Officer Welch started to walk back to his patrol car. It was then that he noticed a group of six or seven individuals in a sheltered bus stop. Three of the individuals were African-American males wearing white shirts. Jamaal Robertson was in the bus shelter but was wearing a dark shirt.

Officer Welch approached the bus shelter to investigate. By the time he arrived, three or four other police officers had already converged on the scene. Their patrol cars, like Officer Welch's, were nearby. While the other officers were already "dealing with the other subjects at the bus shelter," (J.A. 34), Robertson was still seated in the shelter, so Officer Welch decided to focus on Mr. Robertson. Officer Welch stopped about four yards in front of Mr. Robertson, who was sitting with his back to the shelter's back wall. Thus, Mr. Robertson was blocked on three sides by walls, faced a

3

police officer directly in front of him, and had another three or four police officers nearby who were "dealing with" every other individual in the bus stop. During the suppression hearing, Officer Welch could not recall if all of these individuals were searched, explaining that once he approached the bus shelter, he focused entirely on Mr. Robertson.

After approaching Mr. Robertson, Officer Welch first asked whether Mr. Robertson had anything illegal on him. Mr. Robertson remained silent. Officer Welch then waved Mr. Robertson forward in order to search Mr. Robertson, while simultaneously asking to conduct the search. In response to Officer Welch's hand gesture, Mr. Robertson stood up, walked two yards towards Officer Welch, turned around, and raised his hands. During the search, Officer Welch recovered a firearm from Mr. Robertson.

After being indicted for illegal possession of a firearm, Mr. Robertson moved to suppress all evidence seized during the search. Mr. Robertson argued that when he walked towards Officer Welch, turned around and raised his hands, he was obeying an order from Officer Welch. As such, he merely submitted to a search, rather than validly consenting to one. The district court denied the motion to suppress, and Mr. Robertson filed a timely appeal.

4

## II.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Searches without probable cause are presumptively unreasonable, but if an individual consents to a search, probable cause is unnecessary. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). We review for clear error a district court's determination that a search is consensual under the Fourth Amendment. See United States v. Wilson, 895 F.2d 168, 170 (4th Cir. 1990). We apply a subjective test to analyze whether consent was given, looking to the totality of the circumstances. Wilson, 895 F.2d at 171–72. The government has the burden of proving consent. See United States v. Mendenhall, 446 U.S. 544, 557 (1980). Relevant factors include the officer's conduct, the number of officers present, the time of the encounter, and characteristics of the individual who was searched, such as age and education. Lattimore, 87 F.3d at 650. Whether the individual searched was informed of his right to decline the search is a "highly relevant" factor. Wilson, 895 F.2d at 172.

At the outset, we emphasize that our ruling is based exclusively on the facts as taken from Officer Welch's testimony. In the suppression hearing, there were many factual discrepancies between the testimony of Mr. Robertson and Officer Welch, but our reversal in this case is based entirely on

5

Officer Welch's version of events. We stress this because the district court credited Officer Welch's testimony but did not credit Mr. Robertson's. In general, we apply a "particularly strong" clear error standard to factual determinations when they are based on oral testimony. See Lattimore, 87 F.3d at 650-51. This stems from district courts' ability to observe witnesses' demeanor firsthand. Id. However, because our reversal stems from Officer Welch's version of events, credibility determinations play no part in our ruling. Rather, based on the facts credited by the district court, we are compelled to conclude that the government has failed to meet its burden of proving consent. See Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968) (ruling that the government's burden of proving consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority").

This case turns on the difference between voluntary consent to a request versus begrudging submission to a command. Here, Mr. Robertson's behavior was the latter. The area around the bus shelter was dominated by police officers. See Lattimore, 87 F.3d at 650 (citing number of officers present as a factor weighing against consent). There were three patrol cars and five uniformed officers with holstered weapons. Before the encounter, Mr. Robertson observed every other individual in the bus shelter get "handled by" the other police officers. (J.A.

46.) As these individuals were being dealt with, yet another officer approached the bus shelter and focused on Mr. Robertson.

The officer's questioning was immediately accusatory: Officer Welch's first question was whether Mr. Robertson had anything illegal on him. See Elie, 111 F.3d at 1145 (arguing that friendly conversation rather than accusatory questions militates towards consent). When Mr. Robertson responded with silence, the officer waved Mr. Robertson forward and asked to conduct a search. Mr. Robertson's exit was blocked by Officer Welch, who never informed Mr. Robertson that he had the right to refuse the search. See Lattimore, 87 F.3d at 650 (citing individual's knowledge of a right to refuse a search as relevant to a consent finding). Officer Welch's initial, accusatory question, combined with the police-dominated atmosphere, clearly communicated to Mr. Robertson that he was not free to leave or to refuse Officer Welch's request to conduct a search. Mr. Robertson's only options were to submit to the search peacefully or resist violently. Mr. Robertson chose the sensible route. See United States v. Albrektsen, 151 F.3d 951 (9th Cir. 1998) ("[Defendant] was forced to move so that the entering officers would not knock him down. Consent that is not.") (internal quotations omitted).

Further, the police interaction in this case lacks factors that indicate consent. In United States v. Elie, involving a

7

search of the defendant's hotel room, we found it highly relevant that the defendant repeatedly asked the police to search and secure the items in his hotel room. 111 F.3d 1135, 1145 (4th Cir. 1997). Similarly, in Lattimore, the defendant gave verbal consent and also signed a written consent form after the police officer carefully explained that he wanted to search the defendant's car. 87 F.3d at 649-50. In this case, meanwhile, Mr. Robertson never gave verbal or written consent; he merely surrendered to a police officer's command. Further, in both Elie and Lattimore, the interactions between the police and the defendants occurred in broad daylight and were characterized by relaxed, friendly conversation between the two sides. See Elie, 111 F.3d at 1145 ("nothing in the record indicates an environment that was coercive or intimidating. In fact, Elie engaged the officers in friendly conversation"); Lattimore, 87 F.3d at 651 ("at no time did the officer use force or a threat of force to coerce Lattimore's consent. In fact, the two men engaged in friendly conversation"). The situation here, meanwhile, lacks those indicia of consent. Officer Welch's initial question was accusatory and was met with cold silence. Officer Welch never received verbal or written consent. Mr. Robertson's behavior was not a clear-eyed, voluntary invitation to be searched; it was a begrudging surrender to Officer Welch's order.

In sum, the facts as presented by Officer Welch are not enough for the government to demonstrate valid consent. Surrounded by police officers, Mr. Robertson watched as every individual in a bus shelter next to him was handled by the police. Soon thereafter, Mr. Robertson was confronted by a police officer who immediately sought to verify whether Mr. Robertson was carrying anything illegal before waving him forward. Given these facts, we are compelled to conclude that the government has failed to meet its burden of demonstrating consent. Accordingly, we reverse the district court's refusal to suppress evidence.

<u>REVERSED</u>

9

WILSON, District Judge, dissenting:

There are now two opinions with their own plausible findings, one from the district court finding that Mr. Robertson voluntarily consented to the search and the other from this court finding the exact opposite. Both opinions purport to be based upon all the facts and circumstances. The district court's findings, which include the determination that Officer Welch was credible and that Mr. Robertson was not, follow an evidentiary hearing. This court's findings follow consideration of the evidence from the written record. I respectfully dissent because I believe under the circumstances Supreme Court precedent requires this court to defer to the district court's plausible findings.

In a thorough, well-reasoned written opinion, the district court made its findings of fact, which I distill for brevity's sake. Officers respond to a distress call that three men in white t-shirts are chasing another man. According to the caller, a firearm is involved. It is a known high crime area, and it is nighttime. When Officer Doug Welch arrives in the vicinity, three other officers are speaking with various people. There are more non-officers present than officers. Officer Welch notices Mr. Robertson and asks, "Do you have anything illegal on you?" Mr. Robertson does not reply. The diminutive officer, who is 5'2" tall, has not drawn his firearm (nor has

10

any other officer) and simply follows up with a gesture and question, "Do you mind if I search you?" Mr. Robertson, who is much taller than Officer Welch, comes forward, turns, and puts his hands above his head. Officer Welch believes Mr. Robertson's actions indicate his consent. The resulting search produces a firearm. The entire encounter is quite brief, lasting seconds. The conditions, in the words of the district judge, "were neither coercive nor intimidating" and "demonstrate[] by a preponderance of the evidence that Robertson knowingly and voluntarily consented to the search of his person." (J.A. 88, 93)

"The voluntariness of consent to search is a factual question, and as a reviewing court, we must affirm the determination of the district court unless its finding is clearly erroneous." United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996)(en banc). As the Supreme Court has stated in explaining this standard:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.

11

Anderson, 470 U.S. at 573-74 (internal citations omitted).

Here, the majority emphasizes that its ruling is based exclusively on the facts as taken from Officer Welch's testimony and, therefore, is not inconsistent with the "clearly erroneous" standard of review. According to the majority, "[t]his case turns on the difference between voluntary consent to a request versus begrudging submission to command," and "Mr. Robertson's behavior was the latter." The majority then lists those circumstances it finds compelling in reaching its conclusion. I do not dissent because I find the majority's findings and opinion to be illogical or implausible. To the contrary, I find them every bit as logical and plausible as I find the district court's findings and opinion. But as the Supreme Court has cautioned, the question is not whether the court of appeal's "interpretation of the facts [is] clearly erroneous, but whether the District Court's finding [is] clearly erroneous." Id. at 577. In my view it is not. Consequently, I respectfully dissent.