**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-4047**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DEION PENTECOST,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:21-cr-00039-HEH-1)

Submitted:  October 13, 2022                    Decided:  December 15, 2022

Before GREGORY, Chief Judge, and NIEMEYER and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Nia Ayanna Vidal, Assistant Federal Public Defender, Caroline S. Platt, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Kenneth R. Simon, Jr. Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Before pleading guilty to possession by a felon of a firearm, in violation of 18 U.S.C. § 922(g)(1), the defendant Deion Pentecost filed a motion to suppress evidence seized during a search of his vehicle during a traffic stop. The district court denied the motion, and Pentecost filed this appeal, challenging the search under the Fourth Amendment. We affirm.

I

On January 8, 2021, in Henrico County, Virginia, three Henrico County police officers were patrolling near a Motel 6, which was the location of a large amount of violent crime. The officers personally had made arrests there for drug violations, robberies, and assaults.

In the early evening of January 8, Officer Hill observed a suspicious vehicle "backed against the wood line" that had been sitting there for some 20 minutes with its headlights on but with no apparent interaction with the Motel 6. On checking the license plate, he discovered that the vehicle was owned by Pentecost and that Pentecost had earlier been convicted of murder involving the use of a firearm. Officer Hill also learned that Pentecost was a member of the Bloods gang and that he had not been out of prison for long. The officers continued to observe the site, and eventually Pentecost exited the Motel 6 and entered the passenger side of the vehicle.

After following the vehicle, Officer Ritchie, one of the three officers on patrol that night, made a traffic stop of Pentecost's vehicle based on the vehicle's failure to stop at a stop sign, defects in the vehicle's brake light and a taillight, and an expired registration.

While Officer Ritchie was conducting the traffic stop and checking into information related to the stop, Officer Podolak spoke with Pentecost who was in the passenger seat. The conversation, as recorded on the officer's body camera, showed that it was casual and friendly. Prior to the conversation, however, Officer Podolak observed a piece of paper on the passenger floorboard in front of Pentecost that he believed, based on his experience, was of the kind used in smoking marijuana. Officer Podolak began the conversation by asking Pentecost, "Y'all doing alright tonight?" Pentecost replied, "Yes sir." Officer Podolak stated, "Alright. Where were y'all headed to?" Pentecost replied, "Back to his room." Officer Podolak stated, "Ok. What's your name, sir? I'm sorry I didn't get it. I know you spoke to my partner." Pentecost replied, "Deion." Officer Podolak asked, "Is it cool if I call you Deion?" Defendant responded, "Yes sir." Officer Podolak then asked, "Can you come on out and talk to me real quick, Deion? You're not in trouble or anything."

Pentecost exited the vehicle, and as he did so, Officer Podolak observed marijuana on the front of his pants. Based on his training and experience that drugs are often associated with firearms, Officer Podolak asked Pentecost, "Do you have any weapons on you man?" Pentecost replied, "No sir." Officer Podolak then asked, "You're cool if I pat you down real quick?" The defendant, who was facing Officer Podolak, raised his arms up and out to the side. He then used his left hand to wipe the marijuana off his pants before turning his back to Officer Podolak and raising his arms up and out to the side again.

3

During the pat-down, Officer Podolak smelled marijuana and felt semi-firm objects consistent with "marijuana nuggets" in Pentecost's front pocket. When questioned about them, Pentecost admitted to having marijuana in his pocket.

At that point, Officer Podolak detained Pentecost, placing him in handcuffs but advising him that he was not under arrest. Officer Ritchie then searched the vehicle and found a sealed bag that had marijuana residue in it, as well as a .357 Magnum firearm underneath the passenger seat where Pentecost had been sitting. The officers arrested Pentecost and gave him his *Miranda* warnings. Pentecost then explained that he had, that same day, purchased the firearm for $200 and that he was smoking the marijuana to celebrate his birthday. He also acknowledged that he had previously been convicted of murder.

After Pentecost was charged with the illegal possession of a firearm, he filed a motion to suppress the evidence obtained during the traffic stop, arguing (1) that he had not consented to the pat-down and (2) that Officer Podolak did not have a reasonable, articulable suspicion that he was armed and thus dangerous to justify the pat-down.

Following a hearing, the district court denied Pentecost's motion to suppress, finding that Pentecost consented to the pat-down and that, in any event, Officer Podolak had a reasonable, articulable suspicion for conducting the pat-down. As to its finding of consent, the district court found:

> Defendant here raised his arms while facing Officer Podolak, then turned to face away from Officer Podolak and raised his arms again. Like the defendant in [*United States v. Cohen*, 593 F. App'x 196 (4th Cir. 2014)], Defendant here never protested, moved away, or in any way demonstrated discomfort while Officer Podolak executed the pat-down. . . . Defendant's

4

actions and demeanor here mirror established physical manifestations of consent.

And as to the surrounding circumstances that were relevant to its consent finding, it noted:

> The circumstances surrounding the pat-down in this case closely track those in *Cohen*. The officers outnumbered the vehicle passengers only by one, and the pat-down itself was a one-on-one interaction between Defendant and Officer Podolak. Officer Podolak was calm and relaxed and asked Defendant his name and if he had a weapon before asking Defendant if it was "cool" for him to pat Defendant down. No officer drew a weapon during the interaction. Officer Podolak obtained Defendant's consent to a pat-down without employing coercion, force, or intimidation.
>
> *     *     *
>
> [T]he officers here were polite, Officer Podolak's questions and tone were never accusatory or commanding, and Defendant was not blocked in a confined space. Accordingly, and in consideration of the totality of the circumstances, the Court finds that the pat-down was voluntary and consensual.

As to its finding that the pat-down was, in any event, justified, the court stated:

> Here, the police first encountered Defendant at a Motel 6 known for criminal activity. During the traffic stop, Office Podolak observed a piece of paper consistent with marijuana use at Defendant's feet and marijuana residue on Defendant's person as he stepped out of the vehicle. Finally, though not alone dispositive, the officers were aware that Defendant was a known member of the Bloods gang and had a prior conviction for murder. Taking all of these factors into consideration, Officer Podolak objectively had sufficient reasonable suspicion to justify patting down Defendant.

On appeal, Pentecost does not challenge the justification for the traffic stop, nor does he challenge the district court's underlying factual findings. Rather, he argues that the underlying facts do not justify the finding that the pat-down was consensual, nor do they provide a reasonable suspicion that Pentecost was armed and dangerous. We address each argument in turn, reviewing the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Green*, 740 F.3d 275, 277 (4th Cir. 2014).

5

Also, "[w]e construe the evidence in the light most favorable to the government, as the prevailing party below." *Id*.

II

With respect to the consent issue, we begin with the principle that searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless a valid exception applies. And consensual searches are such an exception. *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "The question whether consent to search is voluntary — as distinct from being the product of duress or coercion, express or implied — is one 'of fact to be determined from the totality of all the circumstances.'" *United States v. Azua-Rinconada*, 914 F.3d 319, 324 (4th Cir. 2019) (quoting *Bustamonte*, 412 U.S. at 227). Moreover, consent to a search need not be express but "may be inferred from actions as well as words." *United States v. Hylton*, 349 F.3d 781, 786 (4th Cir. 2003). In *United States v. Drayton*, the Supreme Court found that voluntary consent was provided when the defendant responded to the officer's request for permission to search him "by lifting his hands about eight inches from his legs" and allowing the officer to conduct a pat-down. 536 U.S. 194, 199 (2002). Similarly, in *United States v. Wilson*, we found that voluntary consent was provided when the officer asked to search the defendant's person and "without making an oral response, [the defendant] simply shrugged his shoulders and extended his arms." 895 F.2d 168, 170 (4th Cir. 1990). Lastly, in *United States v. Cohen*, the officer asked the defendant if he had a weapon, and the defendant replied "no" and then "voluntarily raised

his arms," which the officer "reasonably interpreted as an implied consent to search." 593 Fed. App'x 196, 201 (4th Cir. 2014). We noted further in *Cohen* that the defendant "did not lower his arms, protest, or move away at any point before, during, or after the pat-down" as additional indicia of consent. *Id*. (internal quotation marks omitted).

In this case, Pentecost, like the defendants in *Drayton*, *Wilson*, and *Cohen*, responded to Officer Podolak's request to pat him down with physical conduct that implied consent. Pentecost raised his arms while facing Officer Podolak and then turned to face away from Officer Podolak and raised his arms again. Pentecost did not protest or attempt to move away at any point but rather lifted his arms and turned his body to facilitate the pat-down. Further, the interaction between Pentecost and Officer Podolak was a one-on-one interaction in which Officer Podolak used a calm and friendly tone and did not brandish his weapon or otherwise threaten or attempt to intimidate Pentecost. *See Drayton*, 536 U.S. at 203–07 (considering factors such as whether there was an application or show of force, intimidating movement, brandishing of weapons, threats or commands, or an authoritative tone of voice in assessing whether consent was coerced or voluntary). Based on this evidence, we conclude that the district court did not clearly err in finding that Pentecost voluntarily consented to the pat-down search. *See Azua-Rinconada*, 914 F.3d at 324.

In view of our holding, we need not reach Pentecost's alternative argument that Officer Podolak, in any event, did not have reasonable suspicion that Pentecost was armed and dangerous, thereby making the pat-down lawful even if Pentecost did not give his consent.

7

The judgment of the district court is accordingly

AFFIRMED.