23 F.3d 403
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Donihue CARR, Defendant-Appellant.
 No. 93-5529.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Jan. 10, 1994.
Decided: April 26, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CR-93-16-N).
 William Eugene Buyrn, Buyrn & Buyrn, Chesapeake, VA, for Appellant.
 Helen F. Fahey, U.S. Atty., William D. Muhr, Sp. Asst. U.S. Atty., Norfolk, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINSON and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted Donihue Carr of possession with intent to distribute heroin in violation of 21 U.S.C.A. Sec. 841(a)(1) (West 1981 & Supp.1993) (Count 1), use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A.Sec. 924(c)(1) (West Supp.1993) (Count 2), and possession of a firearm by a convicted felon in violation of 18 U.S.C.A. Sec. 922(g)(1) (West 1976 & Supp.1993) (Count 3). He now appeals and challenges the district court's denial of his motion to suppress evidence. Carr asserts that the officers lacked reasonable suspicion to conduct the initial stop and frisk. Because we find that the police had reasonable suspicion to stop Carr and the scope and duration of the stop were reasonable, we affirm Carr's conviction.
 
 I.
 
 2
 Carr addressed a letter to the district court which the court interpreted as a pro se, pretrial motion to suppress evidence. Liberally construing the letter, it raised the following issues: (i) the government lacked probable cause to arrest Carr because the description of his car did not match the car for which the police were looking; (ii) the police illegally stopped Carr; and (iii) the resulting search violated Carr's Fourth Amendment rights.
 
 
 3
 At the suppression hearing, the arresting officer, O'Neill, testified that while he conducted his routine patrol, he looked for a small, gray car with temporary tags occupied by one black male who may have been involved in a homicide in a neighboring city. O'Neill saw a car matching that description in a motel parking lot and discovered from the motel clerk that a black male guest was the driver of the car.
 
 
 4
 Before officer O'Neill's back-up arrived, Carr and a female companion left the motel room and walked toward the car. O'Neill testified that he parked his marked patrol car about thirty feet away from Carr's car, exited his patrol car, and asked Carr to talk to him. As O'Neill approached Carr, he asked Carr if he would step over to O'Neill's car. As Carr approached O'Neill, O'Neill told Carr that he wanted to talk to him about a recent homicide. Although Carr said he was not involved, O'Neill asked if he could pat him down for his safety because he was dealing with a possible homicide suspect. Carr said that O'Neill could pat him down. Carr wore a long coat, but O'Neill felt nothing that resembled a weapon. During O'Neill's conversation with Carr, Carr admitted that he had been convicted of a felony--distribution of heroin--and laid his coat on the hood of O'Neill's car, even though it was quite cold that night.
 
 
 5
 Shortly thereafter, O'Neill's back-up arrived and pulled behind O'Neill's car. Carr then consented to a search of his vehicle and gave his car keys to another officer, Dooley. Dooley immediately found a gun under the floor mat on the driver's side of the car. O'Neill placed Carr under arrest for possession of a firearm by a felon and put him in Dooley's car. Dooley gave Carr the required Miranda warnings.[1]
 
 
 6
 The officers then completed a thorough search of Carr's automobile and person. The officers next searched Carr's coat, which at the time was on O'Neill's car. That search revealed small packets of a white, powdery substance. Carr admitted that the substance was heroin, that the heroin was his, and that the driver's license found in the same pocket as the heroin was used to cut the heroin in the motel room. The officers then arrested Carr for possession of heroin. The officers acknowledged that throughout the entire procedure Carr cooperated.
 
 
 7
 The district court denied Carr's motion to suppress because (i)Carr consented to the vehicle search; (ii) the officer found the gun on the driver's side of the car; (iii)Carr exhibited dominion and control over the car because he had the keys; (iv)the officer found the drugs in Carr's coat pocket and Carr admitted that they were his; (v)the drug was heroin; and (vi)Carr admitted that he used the driver's license to cut the heroin before leaving the motel room. Although the district court had stated that in his letter Carr challenged the legality of the stop, the court did not specifically address the issue. Therefore, no findings were made on whether the encounter was consensual or rather was a stop implicating the Fourth Amendment.
 
 
 8
 The jury found Carr guilty on all counts of the indictment, and the court sentenced Carr to ninety-seven months in prison and five years of supervised release. Carr filed a timely appeal.
 
 II.
 
 9
 We review legal conclusions involved in the district court's suppression determination de novo but review factual findings underlying the legal conclusions subject to the clearly erroneous standard. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992).
 
 
 10
 Before we consider whether Carr's stop violated the Fourth Amendment, we must first consider whether the Fourth Amendment is even implicated. Consensual police-citizen encounters do not amount to a seizure under the Fourth Amendment. United States v. Analla, 975 F.2d 119, 124 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3714 (U.S.1993). To determine if an encounter is consensual, the inquiry focuses on "whether a reasonable person would have felt free to decline the officers' requests or otherwise terminate the encounter." Rusher, 966 F.2d at 877. A person is not seized when the police merely approach him in a public place, ask if he will answer some questions, and ask questions after he indicates a willingness to listen. Florida v. Royer, 460 U.S. 491, 497 (1983). The inquiry is an objective test. Analla, 975 F.2d at 124 (citing United States v. Gordon, 895 F.2d 932, 938 (4th Cir.), cert denied, 498 U.S. 846 (1990)).
 
 
 11
 When O'Neill first asked Carr to step over to the vehicle, Carr was not seized, even though the officers did not tell Carr that he was free to leave or that he could refuse to answer the questions. See Analla, 975 F.2d at 124. The uniformed officers did not draw their guns or threaten Carr with physical force. O'Neill's conversation with Carr did not appear to be intimidating. Finally, the officers parked their cars about thirty feet away from where Carr's car was parked. See generally United States v. Gray, 883 F.2d 320, 322-23 (4th Cir.1989) (discussing factors courts consider in determining whether a seizure occurred).
 
 
 12
 However, when O'Neill asked Carr to talk to him regarding a homicide in a neighboring city and asked Carr if he could pat him down because he was dealing with a possible homicide suspect, a reasonable person in Carr's position would not have believed that he could terminate the encounter or refuse to answer the questions. Therefore, at that point, the encounter ceased to be consensual and escalated to a stop under Terry v. Ohio, 392 U.S. 1 (1968). Accordingly, we must determine whether O'Neill had reasonable suspicion to make the stop.
 
 
 13
 Under Terry, an officer may seize a person if the officer can articulate reasonable suspicion that the person has just committed or is about to commit a crime and may pat-down the person's outer clothing for weapons if the officer reasonably believes that the person may be armed. Id. at 21-22, 27. Reasonable suspicion requires more than a hunch but less than probable cause and may be based on the collective knowledge of officers involved in an investigation. See United States v. Hensley, 469 U.S. 221, 232 (1985). Although an investigatory stop should be brief, Terry imposes no rigid time limitation. The stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Royer, 460 U.S. at 500.
 
 
 14
 Officer O'Neill had reasonable suspicion because he relied on a description of the vehicle and occupant that was involved in a homicide in a neighboring city. When he spotted the vehicle and saw that Carr matched the occupant's description, O'Neill approached Carr and asked him to answer some questions. Because O'Neill reasonably believed Carr was a possible homicide suspect and might be armed, O'Neill properly frisked Carr to determine whether Carr was armed. The stop lasted no longer than necessary because O'Neill diligently questioned Carr in an effort to confirm or dispel his suspicions. See United States v. Sharpe, 470 U.S. 675 (1985). Thus, the stop was reasonable.
 
 
 15
 Carr then consented to a search of his vehicle. On appeal, a district court's finding of consent must be upheld unless it is clearly erroneous. United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990) (citing United States v. Mendenhall, 446 U.S. 544, 558 (1980)). Based on the police officers' testimony, the district court's finding that Carr consented to the search was not clearly erroneous.
 
 
 16
 When the valid search of the car disclosed a gun, Carr was arrested because he was a convicted felon. After a valid arrest, police may conduct a full search of the arrestee's person and area within his immediate control, defined as "the area from within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763 (1969). After Carr was placed under arrest, Dooley conducted a more thorough search of Carr's automobile, person, and coat. The coat was properly searched because it was within Carr's immediate area of control. Therefore, the district court did not err in denying Carr's motion to suppress evidence.
 
 
 17
 The district court's finding that Carr exercised dominion and control over the car and the court's consideration of the officers' testimony regarding when Carr received his Miranda rights should not be disturbed on appeal because they are not clearly erroneous.
 
 III.
 
 18
 For the foregoing reasons, we affirm Carr's conviction.[2] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Another officer testified that Carr was formally read his Miranda rights after the car and coat were searched and after Carr made his statements concerning the drugs
 
 
 [2]
 We deny Carr's motion to appoint counsel in which he challenges his counsel's effectiveness. A claim of ineffective assistance of counsel should be raised by motion under 28 U.S.C. Sec. 2255 (1988), in the district court and not on direct appeal, unless it "conclusively appears" from the record that defense counsel did not provide effective representation. United States v. Fisher, 477 F.2d 300, 302 (4th Cir.1973) (citing United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir.1970)); see also United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3717 (U.S.1992). This is not such a case