UNITED STATES of America, Appellee,

v.

Minwer A. BADWAN, Appellant.

UNITED STATES of America, Appellee,

v.

Rawhi A. BADWAN, Appellant.

Nos. 79–5144, 79–5145.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1980.

Decided June 26, 1980.

Winter, Circuit Judge, filed a dissenting opinion.

Lawrence P. Lataif, Fairfax, Va., for appellant.

Daniel J. Conway, Sp. Asst. U. S. Atty., Jerel Ikuo Yamamoto, Third Year Law Student (Justin W. Williams, U. S. Atty., Leonie M. Brinkema, Asst. U. S. Atty., Alexandria, Va., Daniel M. Cisin, Third Year Law Student, on brief), for appellee.

Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Minwer Badwan and Rawhi Badwan appeal their convictions under 26 U.S.C. § 7206(1) for filing false federal income tax returns. They raise three issues on appeal: the denial of their motions for a continuance of the trial date, the denial of their untimely motion to suppress evidence, and the sufficiency of the evidence to prove all elements of a violation of 26 U.S.C. § 7206(1). We disagree with their contentions on each of these points and affirm.

## I.

The appropriate standard and perspective for review of a denial of a motion for a continuance is found in *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1976):

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face

of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.*

*Id.* at 589, 84 S.Ct. at 849 (citations omitted) (emphasis supplied).

The denial of the Badwans' motions for a continuance is the most troublesome issue presented by this case. Viewed from the perspective of the district court at the time it denied the motions, however, we cannot say that the district court abused its discretion.

### A.

Minwer and Rawhi Badwan are brothers and were the sole partners in Virginia International Trading Company. ("VITC"). On March 5, 1979, a federal grand jury sitting in Alexandria, Virginia returned a five count indictment against Minwer Badwan and a four count indictment against Rawhi Badwan. Each was charged with filing false individual tax returns for the years 1972, 1973 and 1974. In addition, Minwer Badwan was charged with two counts and Rawhi Badwan with one count for filing false partnership tax returns for those same years.

On March 12, 1979, the Badwans appeared with retained counsel before the district court for arraignment. They pleaded not guilty and demanded a jury trial. The district court set the case for trial on April 3, 1979. All pretrial motions were to be submitted by March 21 and heard on March 23. With full opportunity to do so, defense counsel raised no objections to these dates. At oral argument in this court counsel explained that he did not object because he had not yet had a chance to review the evidence in the case. In addition, he said, he knew that the district court was not favorably disposed to grant motions for continuance.

On March 20, counsel filed a motion for an extension of time within which to file pre-trial motions and for a continuance of the trial date. In the motion, counsel represented that he had not been retained until March 9, so he had had no chance to investigate or research the case before indictment. On March 14 he had first met with an Assistant United States Attorney to begin pre-trial discovery. At that meeting counsel was presented "eight volumes of trial exhibits covering hundreds if not thousands of pages." On March 16, the government attorney had called defense counsel to invite him to meet with the I.R.S. agent in charge of the investigation. A meeting had been arranged for March 20. On March 17, counsel had met with the Badwans and decided that a defense investigation would be necessary. The investigation would include the hiring of an accounting firm to review the available materials.

The motion concluded:

In light of the complexity of the case (e. g., the number of Government exhibits and the fact that the indictment covers nine different tax returns over a period of three years) counsel is compelled to request the additional time within which to file motions and a continuance of the trial date from April 3 to a date in late April or early May.

The district court denied the motion.

On the morning of the trial, counsel asked at the outset of the proceedings for permission to approach the bench. This exchange occurred:

COUNSEL: For the sake of the record, we, of course, are not ready for trial. And I have this morning handed your clerk a motion, a written motion, for a continuance or, in the alternative, to dismiss the indictment on the grounds of the defense being forced into a summary trial in this matter.

I also filed today a motion for suppression of evidence.

THE COURT: Why wasn't that filed before?

COUNSEL: For the simple reason, Your Honor, we just over the weekend decided that that had enough merit so that it should be filed. I have articulated in my written motion for a continuance, at least briefly, some of the problems we have been having.

THE COURT: At arraignment there was a time given within which to file motions and a time set for those motions. No motion was filed within that time. And I am unwilling to hear any motion to suppress evidence on the morning of trial with a jury sitting here waiting, and I am unwilling to continue the matter.

For those reasons, the motion will be denied.

### B.

█ The defendants relied almost exclusively in their motions for continuance on the asserted complexity of the evidence in the case. The complexity of a case is undoubtedly one of the circumstances to be considered in deciding whether to grant or deny a motion for continuance. We are not prepared to say, however, that the district judge acted arbitrarily in concluding on the facts presented to him that three weeks was an adequate time in which to prepare a defense in this case.

Of the nine tax returns on which the prosecutions were based, six were the individual returns of the Badwans. Those returns merely reflected an equal division of the partnership profits of VITC. As to the partnership returns, the district court may simply have concluded that the amounts involved suggested some limits to the complexity of the case. The indictments charged that the correct amount of partnership profits was $29,109.13 for 1973, $20,994.48 for 1974 and $24,586.71 for 1975. The Badwans reported partnership profits for those years of $4,096, $6,300 and $13,568.

█ There are other factors here that support the district court's denial of the motions as at least not arbitrary. First, there is defense counsel's silence at arraignment when the trial date was set. Counsel may not have known then of the particular problems he would face in this case, but he must be assumed to have known of the potential complexity of any tax fraud prosecution. He must also be assumed to have known of the likely difficulty of hiring an accountant during the month of March to review the government's computations and analysis. A district judge, aware of the same facts of life, and entitled, as he must be, to assume counsel's zeal in protecting his client's interest, must ordinarily then be entitled to draw the obvious inference from counsel's silence in the face of clear opportunity to signal concern. From these practical considerations has emerged the general principle that an attorney having a substantial claim for a continuance should move for the continuance as early as possible. *United States v. Uptain*, 531 F.2d 1281, 1290–91 (5th Cir. 1976). The later the motion is made the more disruptive will be any continuance granted, and the more likely may it reasonably appear to the judge that the motion is made for dilatory purposes. All this must be taken into account in assessing claims of arbitrariness in denying a continuance, and here it militates against defendants' claim.

█ Second, the defendants have never shown in any concrete way how they were prejudiced by the denial of the continuance. They have argued to us that further investigation "could have led to many innocent explanations for the alleged understatements." We must be reluctant to find arbitrariness in the exercise of trial court discretion based upon no more than post-hoc assertions by counsel that given more time something might have turned up. *See, e. g., United States v. Uptain*, 531 F.2d 1281 (5th Cir. 1976); *United States v. Schwanke*, 598 F.2d 575, 579–80 (10th Cir. 1979). This case is not, for example, like *Shirley v. North Carolina*, 528 F.2d 819 (4th Cir. 1975), where it was demonstrated that the testimony of an unavoidably absent witness would, if believed, have led to the defendant's acquittal.

We do not believe that the denial of a continuance here so clearly violated fundamental fairness or deprived the Badwans of the effective assistance of counsel as to compel a conclusion that it constituted an abuse of discretion.

## II

The defendants also contend that the district court abused its discretion in denying, without a hearing, their motion to suppress evidence made on the morning of trial. The motion was based on asserted violations of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) in interviews held by an I.R.S. agent with the Badwans. The defendants assert that a hearing on voluntariness was required by *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

██ Under Rule 12(b)(3) and (f) of the Federal Rules of Criminal Procedure, the failure to raise these claims before trial constituted a waiver. The defendants argue that the district court should have granted them relief from the waiver, as Rule 12(f) allows; that the early trial date made it impossible adequately to have researched and prepared the suppression motion before trial. None of the considerations that made the issue of the denial of continuance at least an arguable one are present here. The complexity of the other evidence in the case should not have affected defense counsel's ability to challenge the voluntariness of statements by his clients.

We believe that the nine days from arraignment to the time for submission of pre-trial motions was sufficient for preparation of the motion for suppression.

## III

█ The defendants' last contention is that the statute only applies to one who "willfully makes and subscribes" a false tax return. 26 U.S.C. § 7206(1). They argue that the evidence clearly showed that they did not "make" the return, but rather that the returns were prepared by an accountant hired by them. The evidence did clearly show, however, that the accountant who prepared the returns did so solely on the basis of information provided to him by the Badwans, and that the Badwans then signed and filed the returns. This satisfies the statute.

Having found no error on any of the points raised, we affirm the convictions.

*AFFIRMED.*

WINTER, Circuit Judge, dissenting:

I respectfully dissent. As I analyze and understand the record in this case, I am ineluctably led to conclude that the district court abused its discretion in denying the requested continuance.

## I.

The record shows that, after four years of investigation and preparation on the part of the government, the case against the Badwans culminated in the return of a nine-count indictment on March 5, 1979. The indictment covered the tax years 1972, 1973 and 1974. Four days later (Friday, March 9), the Badwans, residents of North Carolina and non-residents of the district in which they were indicted and subsequently tried, retained counsel. Prior to then they were unrepresented. One day after retaining counsel, they journeyed to Virginia to meet with him. The conversation when they met was concerned principally with how to post bail when they were arraigned the following Monday, March 12, 1979. At their arraignment the district court fixed a schedule whereby pretrial motions were to be filed by March 21, were to be heard on March 23 and the trial was to begin on April 3. Counsel lodged no objection to this schedule.

Counsel was in no way dilatory following the arraignment. Two days thereafter (March 14), he met with the prosecutor. Then he learned that the government had eight volumes of trial exhibits that it intended to use at trial. He was allowed to copy only the documents which had been furnished by his clients. His request for other documents was not immediately honored. Two days after that meeting (March

16), the prosecutor invited counsel to meet with the special agent investigating the case; and that meeting was scheduled for March 20.

In the interim, counsel met with the defendants on Saturday, March 17. After further discussions with them, it became apparent that an intensive investigation of their case would be required including the employment of an accountant. On Monday, March 19, seven days after the arraignment and ten days after being retained, counsel communicated with an accounting firm and arranged to meet with them on March 23.

At this stage of his preparation, the course of events impressed upon counsel the need for a continuance. Accordingly, on March 20, he filed a written motion for a continuance. It recited that it was impossible for counsel to gather all necessary materials, much less review them, prior to the date for the filing of motions (March 21), and, furthermore, only after they were obtained, could an accountant begin working with counsel to prepare the case for trial. Counsel asked for additional time in which to file motions and a continuance of the trial date from April 3 to a date in late April or early May. The district court denied the motion by order and without comment on the same day it was filed. Also on that day, the prosecutor advised counsel that he could copy certain, but not all, government exhibits that he had requested.

Counsel met with the accountant on March 23, and the next day the accountant, who was a former IRS agent, spent two and one half hours reviewing the documents at the prosecutor's office. As a result of the review, the accountant, although unable to reach a conclusion as to the accuracy of the government's computations, had no difficulty in concluding that he could not perform his function in the time remaining for trial. By his letter dated March 29, the accountant stated that it was his firm's professional opinion that "it would take several weeks to

perform a thorough review of the Government's calculations," emphasizing that there were in excess of one hundred exhibits and thousands of entries which related to nine United States tax returns, filed during a three year period.

The accountant's letter, in conjunction with the slow and laborious review of the available government records, convinced defense counsel that a continuance was both necessary and imperative to insure a proper defense. Thus, on the day of trial (April 3), counsel filed another motion for a continuance. It recited the reasons previously assigned and added that while the government purported to rely on the bank deposits method of proving the indictments, there were indications that the net worth system was being used and neither counsel nor the accountant had had an opportunity to analyze the case in this light. To support the assertion that the case was complex and that additional time was needed for an accounting analysis, the accountant's letter of March 29 was attached to the motion. The district court summarily denied the motion, and it is inferable from the record that the motion was never read.*

Thereafter, the trial immediately began. Defense objections were few. Although there was some cross-examination of the government's witnesses, no witnesses were called for the defense. In the cross-examination of the witnesses, there were no questions relating to the substance of the government's bank deposits/cash expenditures analysis. Throughout the trial counsel repeatedly informed the court that he lacked copies of the exhibits from which a government witness was testifying. Apparently, counsel's complaints were well founded; the district court scolded the government for its disorganized presentation and stated that "this is one of the sloppiest cases I have ever seen."

## II.

In deciding this case, we must apply the familiar rule that a motion for continuance

---

* The transcript indicates that the remarks of the district judge were directed solely to an accompanying motion to suppress. There was a respectful request from counsel that the court read "at some appropriate time" the motion for continuance and the accountant's letter. The district judge never asserted familiarity with either.

is within the sound discretion of the district court and its exercise of its discretion will not be disturbed unless there is a clear abuse of discretion. Where, as here, the claim is that the denial of the continuance resulted in inadequate preparation time, the factors to be considered as to whether there was an abuse of discretion have been identified in the opinion in *United States v. Uptain*, 531 F.2d 1281, 1286–87 (5 Cir. 1976), a case which the majority also treats as a definitive one:

> We have deemed the following factors highly relevant in assessing claims of inadequate preparation time: the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution. We have also explicitly considered the adequacy of the defense actually provided at trial, the skill and experience of the attorney, any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime, and any representation of the defendant by other attorneys that accrues to his benefit. (footnotes omitted).

In my view these factors in this case aggregate an abuse of discretion. The attorney, who had neither previously represented these defendants nor had ready access to them, was employed with reasonable promptness. He was given three weeks to prepare for the trial of an income tax case which involved primarily the partnership returns of an enterprise for three years. The government intended to prove a willful understatement of tax by the bank deposit or the net worth method. Although counsel promptly sought informal discovery from the government, this was effectively withheld until two weeks before trial. When discovery was given, it was incomplete and it appeared that the government intended to prove eight volumes of exhibits, comprising in excess of one hundred exhibits which reflected thousands of entries. Even before informal discovery was gained, counsel recognized the need for an accounting expert, and he exercised due diligence in recruiting such a witness. When the witness, whose qualifications and good faith are not challenged, inspected the government's proof, it was his professional opinion, unchallenged on this record, that it would take several weeks to complete a review of the government's calculations. In seeking a continuance counsel did not ask for a long delay. His request was for a delay of approximately one month.

The majority is of the view that the case was not complex. I would conclude otherwise. The extent of the government's documentary and statistical proof proves that the case was complex. While the issue of partnership profits for each of three years may seem elementary, how the figure was reached is not. There were issues of how the government reached its conclusions; what methods were used; what evidence it accepted, rejected or neglected. I think it simply inaccurate to characterize a four year investigation, producing eight volumes of exhibits, as simple. I also emphatically reject the amounts in controversy as an accurate measure of the complexity of the issues. Certainly they are no reflection of the value of the constitutional guarantees which were swept away if the continuance was improperly denied.

It is, of course, true that counsel voiced no objection to the schedule prescribed by the district court for motion and trial, but I find his silence completely understandable. By the date of promulgation of the schedule, he manifestly had less than complete knowledge of what the case was all about. He had no basis on which to represent that he could not meet the schedule, and it would have been irresponsible for him to represent that he needed more time. From his silence, I would infer a good faith intention on his part to meet the schedule if humanly possible, and a not unreasonable confidence (unfortunately misplaced) that the district court would not require him to adhere to the schedule if he could subsequently demonstrate that it was too restrictive. His first request for a continuance was only eight days after the arraignment and eleven days after he was first retained.

Similarly, I would take no comfort from the inability of the defendants to show with specificity how they were prejudiced by denial of the continuance. Insufficient time to prepare constitutes prejudice. Here the essence of defendant's claim is that despite promptness and dispatch on their part and that of their attorney, they were denied the opportunity to prepare their defense. Their pitiful showing at trial is eloquent testimony to that fact. If they knew what was their defense, they would have had no need for the expert and they would not thus have been unconstitutionally precipitated into trial. To me it is illogical to reason that they were not harmed by the denial of the delay because they cannot show what benefit to themselves the delay would have generated had it been granted. This is not the case where the delay was sought to explore the strength of the government's case against them and to determine if they had a meritorious defense. Certainly the Constitution guaranteed them that right.

In the view that I take of the case, it is unnecessary for me to discuss the other issues.

Charles Clark, Circuit Judge, concurred in part and dissented in part and filed opinion.