45 F.3d 440
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 William Lockett MARKLEY, Petitioner-Appellant,
v.
R. Michael CODY and Attorney General of the State of
Oklahoma, Respondents-Appellees.
 No. 94-5040.
 United States Court of Appeals, Tenth Circuit.
 Dec. 23, 1994.
 
 1
 Before BALDOCK and McKAY, Circuit Judges, and VRATIL,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Petitioner William Lockett Markley appeals from the denial of his 28 U.S.C. 2254 petition for writ of habeas corpus. We have jurisdiction under 28 U.S.C. 1291, and we affirm.
 
 
 4
 Petitioner was charged in Oklahoma state court with shooting with intent to kill after conviction of two or more felonies. His first jury trial ended in a mistrial. His attorney from that trial was unavailable for the second trial, although Attorney Stephen Riley served as co-counsel in both trials. Riley contacted Attorney Terrill Corley several weeks before the second trial date about representing petitioner, but Corley refused to do anything until he was paid. He was paid on September 11, 1984.
 
 
 5
 On September 13, 1984, Corley filed a motion for a continuance. Corley argued that he wished to have an expert review records in the file showing that petitioner had sustained brain damage during childhood
 
 
 6
 to advise me of any bearing [they] would have upon [petitioner's] ability to perceive accurately an impending dangerous situation which happens over a period of just over a few seconds at most so that the jury could be fully advised of any what would be considered weaknesses in Mr. Markley's testimony.
 
 
 7
 Supp. Vol. V at 15. The state trial court denied the motion without explanation, and trial commenced September 18, 1984.
 
 
 8
 The state presented evidence that petitioner entered a bar, became involved in an altercation with DeWayne Meek, and shot Meek. Petitioner's defense was that Meek made an offensive statement about petitioner's female companion and petitioner told him to shut up. Petitioner then thought he saw Meek pull a gun out of his pocket. Petitioner grabbed Meek's wrist, the gun went off, and Meek fell to the floor. Petitioner denied the gun was his. The jury found him guilty as charged.
 
 
 9
 Counsel moved for a new trial, relying on the same ground for a continuance that he had argued before trial. The state trial court denied the motion without explanation.
 
 
 10
 Following exhaustion of state remedies, petitioner filed the present habeas action, claiming that the state trial court abused its discretion in failing to grant a continuance, resulting in ineffective assistance of counsel, and that he was denied a fair trial because a hearing was not held on his competence to stand trial. The matter was referred to a magistrate judge who ordered respondents to produce certain documents.
 
 
 11
 Those documents showed the following. In 1964, a sanity commission found petitioner mentally ill due to chronic brain syndrome. It was noted that he had uncontrolled kleptomania, a history of violence, and impaired judgment. Petitioner was committed to a hospital, but his discharge record was not produced. In 1968, petitioner was charged with first degree burglary. Upon his own application, he was committed to a hospital for psychiatric evaluation. Dr. Loraine Schmidt reported that petitioner was not mentally ill, was able to distinguish right from wrong, and could advise an attorney in his defense. However, Dr. Harold Mindell found that petitioner's mental ability to distinguish right from wrong was vague and his ability to understand the nature and consequences of his actions was grossly impaired. He concluded that petitioner's criminal act was the result of a mental illness.
 
 
 12
 Petitioner was found not guilty by reason of insanity and committed to a hospital in June 1969. About one month later, it was found that he had become restored to mental competency, and he was discharged from the hospital. The records from a one-month admission to the VA Hospital in June 1983 indicated that petitioner was not overtly psychotic, denied perceptual distortions, and had a coherent, logical, and goal-oriented thought process. Neuropsychological testing found no impairments of the cognitive functions, no evidence of a learning disability, and no brain damage.
 
 
 13
 Attorney Corley submitted an affidavit stating he did not question petitioner's competency to stand trial as petitioner exhibited no abnormal behavior. Attorney Riley submitted an affidavit stating that he and petitioner had discussed whether petitioner's competency should be raised and they decided it should not be raised. Riley thought petitioner was competent when the offense was committed and at trial.
 
 
 14
 Petitioner submitted the letter of Dale Jordan, director of Jordan Diagnostic Center, stating that petitioner was addicted to sugar and if he ate as much as 100 teaspoons a day, he became emotionally unbalanced, paranoid and sometimes schizophrenic, and would have an unstable sense of reason and a hair trigger level temper. Petitioner also submitted his wife's affidavit in which she stated that six months before the shooting incident, petitioner had been consuming large amounts of sugar. His behavior was erratic and he imagined seeing things that were not there.
 
 
 15
 The magistrate judge considered these documents, but concluded they did not support petitioner's claims. He recommended denial of the petition.
 
 
 16
 The district court considered petitioner's objection to the magistrate judge's report and recommendation. The court noted that petitioner had last been found to be mentally ill in 1969 and was found to be competent shortly thereafter. In 1983, he was found to have no impairments of his cognitive functions and no evidence of brain damage. Thus, he had not presented a reasonable probability that the outcome of the trial would have been different had the insanity defense been used. Finally, the district court agreed there was no evidence to suggest petitioner was incompetent at the time of trial. It adopted the magistrate judge's report and recommendation.
 
 
 17
 Petitioner contends the denial of his motion for a continuance violated his right to due process by preventing trial counsel from procuring the services of a psychiatrist to aid in developing either an insanity defense or a defense of self-defense. On direct appeal, we review denial of a continuance for abuse of discretion. Case v. Mondragon, 887 F.2d 1388, 1396 (10th Cir.1989), cert. denied, 494 U.S. 1035 (1990). The relevant factors are the diligence of the party requesting the continuance, the likelihood that the continuance would accomplish the purpose underlying the expressed need for the continuance, inconvenience to others resulting from the continuance, and the need asserted for the continuance and harm the party requesting it might suffer if it is denied. Id.
 
 
 18
 When denial of a continuance is asserted as the basis for a habeas petition, however, the petitioner must also show that the denial was " 'so arbitrary and fundamentally unfair that it violates constitutional principles of due process.' " Id. (quoting Hicks v. Wainwright, 633 F.2d 1146, 1148 (5th Cir.1981)). The focus is on the need for the continuance and prejudice resulting from its denial. Id. at 1397.
 
 
 19
 "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). The reason for the continuance presented to the trial judge at the time it was requested was to have an expert review petitioner's records to determine whether his organic brain damage could have distorted his perception as to whether Meek had a gun. However, there is nothing in those records linking petitioner's organic brain damage to perceptual distortion. Petitioner has not submitted any expert opinion that those records could support a claim of perceptual distortion. The 1983 VA records refute the claims of brain damage and perceptual distortions.
 
 
 20
 Petitioner contends that if a continuance had been granted to find a psychiatrist, that psychiatrist would have discovered the facts of his abnormal behavior as described in his wife's affidavit and Dr. Jordan's letter. The theory of petitioner's alleged sugar addiction and its effects on his mental state was not presented to the state trial court in support of the request for a continuance. Ungar, 376 U.S. at 589, cautions that the due process analysis should focus on the reasons given the trial judge when requesting the continuance.
 
 
 21
 Even if consideration of these documents and this theory[2] is appropriate, we would not be persuaded that denial of the continuance violated petitioner's due process rights. Putting aside questions of Dr. Jordan's qualifications and the testing methods he used to arrive at his diagnosis, nothing in the record indicates that petitioner had ingested anywhere near 100 teaspoons of sugar the day of the shooting, the amount Dr. Jordan thought would cause him to become paranoid and "sometimes" schizophrenic. Petitioner testified at his first trial that he had consumed a steak, a baked potato, a salad, tomato juice and "a" Dr. Pepper for dinner several hours before the shooting incident. Supp. Vol. IV at 303. This refutes any suggestion that he was in some kind of sugar-induced frenzy the night of the shooting.
 
 
 22
 Other than Dr. Jordan's letter and his wife's affidavit, petitioner has presented no evidence as to what counsel might have discovered had he been granted a continuance. We are "reluctant to find arbitrariness in the exercise of trial court discretion based upon no more than post-hoc assertions ... that given more time something might have turned up." United States v. Badwan, 624 F.2d 1228, 1231 (4th Cir.1980), cert. denied, 449 U.S. 1124 (1981). Petitioner has not established that he was prejudiced by the denial of a continuance. Thus, we conclude that denial of the continuance did not deprive petitioner of due process.[3]
 
 
 23
 Petitioner claims that if denial of the continuance was not error, then trial counsel was ineffective for failing to investigate his defense. To prove an ineffective assistance counsel claim, a petitioner must show both that counsel's performance was deficient and that that deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the prejudice prong of the test, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. For the reasons discussed above, we conclude petitioner failed to show he was prejudiced by counsel's failure to investigate the defense.
 
 
 24
 Finally, petitioner challenges the state trial court's failure to hold a hearing sua sponte on his competency to stand trial. "[F]ailure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Drope v. Missouri, 420 U.S. 162, 172 (1975). In reviewing whether a trial court should have held a competency hearing, the test is whether the court " 'should have experienced doubt with respect to competency to stand trial.' " Coleman v. Saffle, 912 F.2d 1217, 1226 (10th Cir.) (quoting United States v. Crews, 781 F.2d 826, 833 (10th Cir.1986)), cert. denied, 497 U.S. 1053 (1990). " 'To raise a substantial question requiring a competency hearing there must be some evidence to create doubt on the issue. Merely raising the issue is insufficient.' " Id. at 1225-26 (quoting Crews, 781 F.2d at 833). A defendant's trial demeanor must be considered in determining whether there is doubt as to his competency. Lafferty v. Cook, 949 F.2d 1546, 1555 n. 10 (10th Cir.1991), cert. denied, 112 S.Ct. 1942 (1992).
 
 
 25
 We have already summarized the medical evidence presented to the trial court and none of it indicated petitioner was incompetent to stand trial. In addition, Attorneys Corley and Riley had no reason to doubt petitioner's competency to stand trial. Finally, our review of the trial transcript does not reveal anything that would cause us to doubt petitioner's competency. We conclude the state trial court did not deny petitioner a fair trial by failing to hold a competency hearing.
 
 
 26
 Petitioner's motion to supplement the appellate record is GRANTED in part, and DENIED in part.[4] The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 **
 Honorable Kathryn H. Vratil, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Petitioner suggests that Dr. Jordan's diagnosis of primary dyslexia was somehow relevant to his defense. Dr. Jordan stated that petitioner's dyslexia would affect his ability to read and spell. We fail to see what effect it would have on his ability to correctly perceive whether Meek had a gun
 
 
 [3]
 Contrary to petitioner's phrasing of the issue on appeal, his trial attorney did not request a continuance to develop an insanity defense and, in fact, specifically stated that the medical records did not indicate petitioner was insane at the time of the incident. Even if this issue were properly before us, we would conclude that the records provide no basis for doubting whether petitioner could distinguish right from wrong as applied to the shooting and understand the nature and consequences of his act. See Nauni v. State, 670 P.2d 126, 132 (Okla.Crim.App.1983)
 
 
 [4]
 The motion to supplement is granted with respect to documents that are contained in the state court record, document five, and document eight, and attachments thereto, which have been added to the appellate record. It is denied with respect to documents not contained therein. However, the documents that are not added to the record would not alter the result if they had been added to the record