51 F.3d 269
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Adrian Lamont DAVIS, Defendant-Appellant.
 No. 93-5712.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 2, 1995.
Decided: March 31, 1995.
 
 ARGUED: Rodney Shelton Toth, Charlotte, NC, for Appellant. Robert James Conrad, Jr., Assistant United States Attorney, Charlotte, NC, for Appellee. ON BRIEF: Mark T. Calloway, United States Attorney, Marlene Y. Bishop, Assistant United States Attorney, Charlotte, NC, for Appellee.
 Before ERVIN, Chief Judge, and MICHAEL and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Adrian Lamont Davis appeals from his convictions and sentences for numerous drug and racketeering related offenses. Finding no reversible error, we affirm.
 
 I.
 
 2
 On November 4, 1992, a forty-three count indictment was returned against Davis and eight co-defendants in the Western District of North Carolina. A second indictment was filed on May 3, 1993, and the indictments were consolidated for trial by the district court on May 14, 1993.
 
 
 3
 The evidence at trial demonstrated that Davis was the leader of a ruthless and violent gang known as the Posse. The Posse was organized to acquire and sell illegal drugs not by purchase but by robbing, kidnapping, assaulting, and murdering rival drug dealers. There was evidence that Davis ordered the killing of several persons, kidnapped others, committed numerous robberies and assaults, and sold large quantities of drugs.
 
 
 4
 After a jury trial, Davis was convicted of one count of conspiring to possess with intent to distribute, and conspiring to distribute, cocaine base and heroin; one count of conspiring to commit violent crimes in aid of racketeering activity; five counts of assault with a dangerous weapon in aid of racketeering activity, and aiding and abetting in the same; two counts of murder in aid of racketeering activity, and aiding and abetting in the same; one count of kidnapping in aid of racketeering activity, and aiding and abetting in the same; sixteen counts of using and carrying a firearm in relation to crimes of violence and drug trafficking crimes, and aiding and abetting in the same; and one count of possessing a firearm after having been convicted of a felony. The district court sentenced Davis to a term of imprisonment of five concurrent life sentences plus 3,660 months. This appeal followed.
 
 II.
 
 5
 Davis claims that two pretrial rulings of the district court were erroneous.
 
 A.
 
 6
 First he asserts that certain statements made to law enforcement officers were involuntary and obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and that the district court erred in failing to conduct an evidentiary hearing on his motion to suppress. Davis did not file his motion to suppress until May 24, 1993, the first day of trial; he filed the motion before the jury was empaneled but well after the pretrial motion filing deadline established by the court.[1] Rule 12(f) of the Federal Rules of Criminal Procedure makes clear that the failure to file pretrial motions prior to the time specified by the court "shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." See also United States v. Wilson, 895 F.2d 168, 173 (4th Cir.1990). No such cause was shown here, other than the inability of counsel to prepare the case in a timely manner. Accordingly, Davis waived his right to be heard on this issue. See id. (affirming district court's refusal to grant a trial-day request for suppression hearing); United States v. Badwan, 624 F.2d 1228, 1232 (4th Cir.1980), cert. denied, 449 U.S. 1124 (1981) (same); see also United States v. Wertz, 625 F.2d 1128, 1132 (4th Cir.), cert. denied, 449 U.S. 904 (1980) (district court's denial of relief from defendant's waiver "is to be disturbed only for clear error").[2] B.
 
 
 7
 The other pretrial ruling that Davis contends was erroneous was the district court's denial of his motions for a continuance. We review that ruling for abuse of discretion. United States v. LaRouche, 896 F.2d 815, 823 (4th Cir.) (standard afforded to district court to grant or deny continuance is "broad and deferential"), cert. denied, 496 U.S. 927 (1990). In denying the motions, the court found that Davis had been awaiting trial for more than seven months and that the case was "no more factually, or legally sophisticated than the hundreds of drug conspiracy cases in this district regularly prepared for in less than two months." Furthermore, the court found that counsel had more than two months to prepare for trial and that, by virtue of the government's open file policy, counsel had unlimited access to all discovery materials during this time.[3] In light of these circumstances and the fact that Davis had already been granted two continuances previously, the district court's denial of his subsequent motions to continue did not constitute an abuse of discretion.
 
 III.
 
 8
 Davis also maintains that the district court erred in several respects during his trial.
 
 A.
 
 9
 Specifically, he maintains that the district court erred in instructing the jury regarding reasonable doubt.[4] The test is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [reasonable doubt] standard." Victor v. Nebraska, --- U.S. ----, ----, 114 S.Ct. 1239, 1243 (1994).[5] During voir dire, the district court instructed the jury:
 
 
 10
 [t]he legal concept of reasonable doubt does not mean the government has to prove the defendant's guilt beyond a reasonable doubt.... Proof beyond a reasonable doubt is established when the evidence is such that you would be willing to go out in the most important of your affairs without hesitation.
 
 
 11
 These statements, taken alone, were clearly error. In addition, Davis asserts that the court's instruction during voir dire that proof beyond a reasonable doubt "means you're firmly convinced, I guess, is the best way to put it," demonstrated the court's own confusion as to the definition of reasonable doubt, and that the court's final instructions prior to deliberation that a reasonable doubt "is a real doubt" and that proof beyond a reasonable doubt "is proof of such a convincing character" suggest a "higher degree of doubt than will comply with due process." See Cage v. Louisiana, 498 U.S. 39, 41 (1990) (per curiam). These instructions, portions of which were offered by the court on its own initiative without request from either party, were by no means a model of clarity.
 
 
 12
 Read as a whole, however, there is no "reasonable likelihood" that the jury understood the instructions as allowing them to convict on anything less than proof beyond a reasonable doubt. During voir dire, the district court instructed the jury that "beyond a reasonable doubt" is "more than preponderance of the evidence.... The government's burden of proof is more than that. The scales have to tilt not all the way, not certain beyond all doubt, but .... it is the greatest burden of proof in any case that is tried." Prior to deliberation, the court further instructed the jury that "the government's burden of proof is a strict or heavy burden" and that "[p]roof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs." In addition, the court instructed the jury more than once that a defendant is presumed innocent, and the final instructions administered to the jury prior to deliberation adequately conveyed the reasonable doubt standard so as to cure any lingering confusion from the instructions administered during voir dire. See People of Guam v. Ignacio, 852 F.2d 459, 461 (9th Cir.1988) ("Because the trial judge used the correct instruction at the end of trial, and because the correct instruction was the only instruction given to the jury to take with them to the jury room, it is presumed that the jury followed the correct instruction."); see also United States v. Egenberg, 441 F.2d 441, 444 (2d Cir.), cert. denied, 404 U.S. 994 (1971). Accordingly, taken in context, the instructions as administered did not constitute reversible error.
 
 B.
 
 13
 Davis asserts that the district court erred by not declaring a mistrial after an improper conversation between a non-testifying government case agent and a juror who ultimately became the jury foreperson. There is a strong presumption of prejudice arising from all improper juror contacts, and the government has the burden to rebut that presumption. Mattox v. United States, 146 U.S. 140, 150 (1892). The presumption is not conclusive, however, and may be overcome by showing the non-prejudicial character of the contact. Remmer v. United States, 347 U.S. 227, 229 (1954). Once the government has successfully rebutted the presumption of prejudice, the defendant must present evidence showing actual prejudice in order to warrant a mistrial. Stockton v. Virginia, 852 F.2d 740, 743-44 (4th Cir.1988), cert. denied, 489 U.S. 1071 (1989); see also United States v. Day, 830 F.2d 1099, 1105 (10th Cir.1987).
 
 
 14
 The juror here, during a break from the government's case-in-chief, briefly asked the government's case agent in a courthouse restroom about the function of the Bureau of Alcohol, Tobacco, and Firearms. The agent told the juror that "ATF investigates firearms violations, explosives, in the old days moonshinings and arsonists, that that's what the majority of our work revolves around." After examining the agent, the court determined that the conversation had not involved the merits of the pending case and that no prejudice had been shown. Davis failed to demonstrate any actual prejudice, and indeed he specifically requested that the juror not be questioned about the incident. Accordingly, there was no error. See Day, 830 F.2d at 1105 (agent's restroom comment to juror that a tape recording that was about to be played in trial "may put him to sleep" was a "common, everyday greeting" and was not presumptively prejudicial); United States v. Hines, 696 F.2d 722, 731 (10th Cir.1982) (no prejudice from conversation between jurors and FBI agent concerning qualifications for becoming an agent).
 
 C.
 
 15
 Davis also contends that the district court erred in admitting some evidence and excluding other evidence. Such decisions are reviewed for abuse of discretion. United States v. Morison, 844 F.2d 1057, 1078 (4th Cir.), cert. denied, 488 U.S. 908 (1988).
 
 
 16
 Davis argues that the court abused its discretion in admitting certain crime-scene photographs of the murder victims and a photograph of one of the victims in his casket. It seems to us that the unfair prejudicial effect of these photographs, particularly that of the young victim in his casket, did outweigh what the government contends was their probative value of "making it more likely that what the witnesses said happen did in fact occur." In a case in which there is as much admissible evidence of guilt as there was here, a prosecutor's decision to "load it on" by seeking the admission of inadmissible evidence is not only unnecessary but also reprehensible. Nevertheless, in light of the abundant other evidence of Davis' guilt, the error in this case was harmless. See United States v. Grandison, 780 F.2d 425, 429-30 (4th Cir.1985), vacated on other grounds, 479 U.S. 1075 (1987); see also United States v. Analla, 975 F.2d 119, 125-26 (4th Cir.1992) (district court's admission of crime-scene photographs of murder victims was not an abuse of discretion), cert. denied, --- U.S. ----, 113 S.Ct. 1853 (1993).
 
 
 17
 Relying on the residual hearsay exceptions contained in Rules 803(24) and 804(b)(5) of the Federal Rules of Evidence, Davis also argues that the district court abused its discretion in excluding from evidence certain hearsay statements. However, Davis failed to demonstrate the unavailability of the declarants for purposes of Rule 804, nor did he provide sufficient "indicia of reliability" or the requisite pretrial notice of his intention to offer the statements under either of the exceptions. See United States v. Heyward, 729 F.2d 297, 299 n. 1 (4th Cir.1984) (notice requirements of residual hearsay exceptions are strictly construed), cert. denied, 409 U.S. 1105 (1985). None of the statements that he sought to admit qualified for any of the exceptions to the hearsay rule, and thus the district court did not abuse its discretion by excluding them.
 
 IV.
 
 18
 Davis next challenges the sufficiency of the evidence to support his convictions for crimes related to racketeering activity and for possession of a firearm after having been convicted of a felony. The standard of review in evaluating the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). A jury verdict must be sustained if there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). This standard requires us to construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced. Giunta, 925 F.2d at 764 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence may suffice to support a guilty verdict, United States v. George, 568 F.2d 1064, 1069 (4th Cir.1978), as may the uncorroborated testimony of an accomplice. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985).
 
 A.
 
 19
 Davis claims there was insufficient evidence adduced at trial both as to the existence of an enterprise distinct from that necessary to conduct the pattern of racketeering activity and as to the effect such activity had on interstate commerce. For purposes of the criminal racketeering statutes, an "enterprise" includes the following:
 
 
 20
 any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce.
 
 
 21
 18 U.S.C. Sec. 1959(b)(2). The characteristics generally associated with such enterprises include "continuity, unity, shared purpose and identifiable structure." United States v. Fiel, 35 F.3d 997, 1003 (4th Cir.1994) (quoting United States v. Griffin, 660 F.2d 996, 1000 (4th Cir.1981), cert. denied, 454 U.S. 1156 (1982)), cert. denied, --- U.S. ----, --- S.Ct. ----, 1995 U.S. LEXIS 1434 (U.S. Feb. 21, 1995). The government has the burden of proving that " '[the enterprise] is an entity separate and apart from the pattern of [racketeering] activity in which it engages,' and its separate existence must be proved in order to convict." Griffin, 660 F.2d at 999 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).
 
 
 22
 Here there was testimony from co-defendants that from at least January, 1992 through August, 1992, a group which identified itself as "the Posse" conspired to commit "licks," which consisted of robberies and assaults on other drug dealers to obtain drugs, money, and firearms by force. Davis was generally acknowledged as the leader of this group, and the proceeds were divided among the Posse members. There was also evidence admitted at trial that certain drugs and firearms obtained or employed by the group were manufactured outside the state of North Carolina or the United States, thereby implicating interstate and foreign commerce. Accordingly, the evidence was sufficient to support Davis' convictions on racketeering-related activities.
 
 B.
 
 23
 Davis also contends the government failed to produce sufficient evidence to support his conviction for possession of a firearm by a convicted felon. Specifically, he claims the government failed to carry its burden of showing that Davis' civil rights had not been restored after his prior felony conviction. See 18 U.S.C. Sec. 921(a)(20) ("Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter ...."); see also United States v. Reedy, 990 F.2d 167, 171 (4th Cir.) ("to obtain a conviction under Sec. 922(g)(1), the government must prove as an element of its case that the State has not restored the defendant's civil rights for the predicate felony" (citing United States v. Essick, 935 F.2d 28, 31 (4th Cir.1991)) (emphasis in original) (footnote omitted)), cert. denied, --- U.S. ----, 114 S.Ct. 210 (1993).
 
 
 24
 The government introduced evidence at trial that Davis had been convicted of a felony in North Carolina on May 30, 1990, for which he received a five-year sentence. Pursuant to N.C.G.S. Sec. 14-415.1, Davis was prohibited from possessing a firearm "within five years from the date of such conviction, or the unconditional discharge from a correctional institution, or termination of a suspended sentence, probation or parole upon such conviction, whichever is later." See also United States v. McLean, 904 F.2d 216, 219 (4th Cir.), cert. denied, 498 U.S. 875 (1990). The government alleged in its indictment that Davis possessed a firearm on August 11, 1992; even assuming Davis served no part of his sentence for his 1990 North Carolina conviction, the possession alleged in the indictment here occurred within the five-year prohibition period mandated by N.C.G.S. Sec. 14-415.1. Accordingly, there was sufficient evidence to show that Davis' civil rights had not yet been restored at the time of the instant offense. See Essick, 935 F.2d at 31 ("In North Carolina, the government must prove, at a minimum, that the defendant possessed a firearm within five years of release from supervision resulting from the prior North Carolina felony.").
 
 V.
 
 25
 Finally, Davis contends that the district court overstated the amount of cocaine base attributable to him at sentencing.[6] The standard of proof to be employed at sentencing is a preponderance of the evidence. United States v. Engleman, 916 F.2d 182, 184 (4th Cir.1990). The quantity of drugs involved is a factual issue reviewable only for clear error. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990); United States v. Vinson, 886 F.2d 740, 742 (4th Cir.1989), cert. denied, 493 U.S. 1062 (1990).
 
 
 26
 Pursuant to the United States Sentencing Guidelines, "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. Sec. 1B1.3, comment (n.2). See also United States v. Irvin, 2 F.3d 72, 75 (4th Cir.1993); United States v. Richardson, 939 F.2d 135, 141 (4th Cir.), cert. denied, 502 U.S. 987 (1991). The district court here attributed to Davis between one and a half and five kilograms of cocaine base. The evidence adduced at trial supported this finding.
 
 
 27
 One witness testified that he, Davis, and another co-defendant each distributed one kilogram of cocaine base during the time alleged in the indictment; another witness testified that Davis told her of robberies in which he participated involving at least one and a half kilograms of cocaine. Other witnesses testified to numerous incidents where Posse members purchased or stole ounce and kilogram quantities of cocaine, heroin, and "dope" or "cooked rock." The court's attribution to Davis of at least one and a half kilograms of cocaine base was supported by the record and was not clearly erroneous; indeed, under these facts the court would have been justified in attributing to Davis an even greater amount of drugs.
 
 
 28
 Accordingly, Davis' convictions and sentences are
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 The arraignment order entered in this case specified that the deadline for filing pretrial motions was 15 days after the appointment of counsel; trial counsel was appointed on March 15, 1993. On April 13, Davis moved for an extension, and the district court, by order dated April 26, extended the deadline until April 30, 1993. Davis failed to meet that deadline
 
 
 [2]
 Alternatively, Davis contends that his statements made to law enforcement officers in exchange for promises of leniency gave rise to an implied plea agreement. There are several problems with this argument. First, Davis failed to raise this argument until after trial, in his objections to the presentence report, and so did not present any evidence on this claim. For this reason, he "waived his right to a more searching resolution of the issue." Wilson, 895 F.2d at 173 (defendant's untimely filing of his motion to suppress constituted a waiver of his right to a determination as to the voluntariness of his statements). Second, the state law enforcement officers who allegedly made these promises had no authority to negotiate any plea agreement. Moreover, the asserted promises were neither specific nor concrete enough to constitute a basis for a plea agreement. See United States v. McIntosh, 612 F.2d 835, 837 (4th Cir.1979) (state prosecutor had no authority "either in fact or appearance" to "settle [defendant's] federal criminal liabilities"). Finally, it is undisputed that Davis voluntarily turned himself in. See also Plaster v. United States, 789 F.2d 289, 292-93 (4th Cir.1986) ("a plea bargain is 'a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest' " (quoting Mabry v. Johnson, 467 U.S. 504, 507 (1984)); United States v. Shears, 762 F.2d 397, 401-02 & nn. 2, 3 (4th Cir.1985) (and cases cited therein) ("Government agents may initiate conversations on cooperation [and] promise to make a defendant's cooperation known to the prosecutor....")
 
 
 [3]
 Davis argues that he had insufficient opportunity to prepare a defense to the second indictment, filed May 3, 1993, which was subsequently consolidated for trial with the original indictment on May 14, 1993
 However, the single count contained in the second indictment was virtually identical to Count 43 of the original indictment, filed November 4, 1992, except as to the specified date of Davis' prior felony conviction. Therefore, Davis was not prejudiced in any way by the late filing of the second indictment, and his trial counsel had more than two months to prepare a defense to the substantive charge contained therein.
 
 
 [4]
 Davis also argues that the district court committed reversible error with respect to its instructions on conspiracy, murder, and kidnapping; however, he failed to object to these instructions at trial. Rule 30 of the Federal Rules of Criminal Procedure requires any objections to jury instructions to be raised prior to jury deliberations, and the failure to raise such objections warrants review only for "plain error." See Fed.R.Crim.P. 52(b); see also United States v. Rogers, 18 F.3d 265, 268 (4th Cir.1994). There was no such error here
 
 
 [5]
 The government argues that Davis failed to object to the reasonable doubt instructions and should again be required to show "plain error" under Fed.R.Crim.P. 52(b). We need not reach this question because even if they were properly objected to, the instructions as administered did not constitute reversible error
 
 
 [6]
 Davis also contends that he was denied an opportunity to contest the amount of drugs at a sentencing hearing. However, the record clearly reflects that such a hearing was in fact held and attended by Davis and his counsel, at which the district court addressed Davis' objections to the presentence report. The court then adopted the findings set forth in the report. See United States v. Bowman, 926 F.2d 380, 381 (4th Cir.1991) (sentencing judge "may give weight to any reliable source of information"); United States v. Wilson, 896 F.2d 856, 857 (4th Cir.1990) (same); see also United States v. Terry, 916 F.2d 157, 162 (4th Cir.1990) (defendant has the burden of showing that disputed information contained in the presentence report is unreliable or inaccurate)