**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 94-5607

JEFFREY WELLS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                          No. 94-5672

JEFFREY WELLS,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-94-35)

Argued: January 31, 1996

Decided: May 28, 1996

Before ERVIN and WILLIAMS, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Reversed and remanded by unpublished per curiam opinion. Judge
Williams wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Drewry Bacon Hutcheson, Jr., Alexandria, Virginia, for Appellant. Timothy Joseph Shea, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, William G. Otis, Senior Litigation Counsel, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Jeffrey Wells of one count of possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1), and one count of a prisoner in possession of heroin, 18 U.S.C. § 13, assimilating Code of Virginia § 53.1-203(5). On appeal, Wells contends that the district court abused its discretion by denying his motion for a continuance prior to trial. The government cross appeals, claiming that the court erred by departing downward at sentencing after determining that Wells' career offender status was disproportionate to the seriousness of the offense. Because we find that the district court should have granted Wells' motion for a continuance, we reverse and remand for a new trial. We also hold that the district court should not have departed downward when calculating Wells' sentence.

I

Wells was, and continues to be, an inmate at the Lorton Reformatory, a District of Columbia Department of Corrections facility. At the time relevant to this appeal, he was housed in Central Facility with 60 other inmates in a dormitory-style room that had shower facilities at one end. The showers were separated from the rest of the room by a partition that was between six-and-a-half and seven feet high.

2

During a routine shakedown of the prisoners, the guards randomly chose Wells to participate in a strip search. Strip searches were conducted by guards in the shower area behind the partition. The rest of the inmates were required to remain near their beds.

After walking behind the shower partition, Wells allegedly removed a latex glove from his rectum and threw it over the partition into the dormitory area. The government introduced evidence showing that the glove, which contained small bags filled with 2.21 grams of heroin and $140, was picked up by a guard, Officer Millard Sailor. Wells claims that the glove was planted by Officer Sailor.

Prior to trial, Wells' counsel requested that the government provide him with a roster listing the inmates who had been in his Central Facility dormitory during the strip search. He wanted to contact the inmates to determine whether they had witnessed Officer Sailor planting the glove. In February 1994, he filed a discovery motion requesting the roster. He also wrote a letter to the Assistant United States Attorney prosecuting the case, reiterating his request for the roster. Additionally, he alleges that he made a verbal request to the prosecutor. Wells claims that officials of the Lorton Reformatory told the prosecutor that a roster did not exist.

In April 1994, Wells' first trial resulted in a mistrial after the jury was unable to reach a verdict. A second trial was scheduled for June 8, 1994. On May 17, Wells' attorney applied for a subpoena duces tecum. The subpoena was issued on May 19 directing Lorton's administrator to deliver the roster to the clerk on May 25. The subpoena was delivered to the marshal's office on May 19, but the marshal did not serve it until June 2. Although Lorton officials had denied knowing the location of the roster, the administrator delivered it to the clerk on June 6, just two days before the trial date. On June 7, Wells filed a motion for a continuance, citing the need for more time to interview the individuals listed on the roster. The district court denied the motion, finding that Wells already knew, or should have known, the names or nicknames of the other inmates in his dormitory. The jury convicted Wells on both counts.

II

Wells contends that the district court erred by denying his motion for a continuance prior to the second trial. When seeking a continu-

3

ance in order to procure additional witnesses, a party must show "who [the witnesses] are, what their testimony will be, that it will be relevant under the issues in the case and competent, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance for the trial as set." United States v. Clinger, 681 F.2d 221, 223 (4th Cir. 1982)(citation omitted). We review a district court's denial of a motion for a continuance for abuse of discretion and consider whether the denial prejudiced the moving party. United States v. Colon , 975 F.2d 128, 130 (4th Cir. 1992).

At the outset we note that the record indicates that Wells did not have ready access to all of the individuals listed on the Central Facility dormitory roster. After the search in question, Wells was transferred within Lorton Reformatory from the Central Facility to the Occoquan Facility. Inmates within the two facilities are kept separate from each other. Without the roster Wells did not have enough information to subpoena, or even locate, his former dormmates; he did not know the inmates' full names or their inmate identification numbers.

It is true that Wells was not able to fully satisfy his burden under Clinger. But this is an unusual situation. If Wells had received the roster from the government when he originally asked for it, he would have had an adequate opportunity to identify and interview critical witnesses prior to both trials. But because the government did not give him the roster until June 6, Wells needed a continuance in order to have enough time to interview the individuals on the list to determine if they had, in fact, witnessed Officer Sailor planting the latex glove. The government therefore begs the question to some extent by arguing that the denial of the continuance was proper because Wells failed to identify the witnesses, establish that the testimony was relevant, and show that the witnesses could be located. To make such a showing, Wells first needed the roster.

We also conclude that Wells exercised due diligence in seeking to obtain the roster prior to the trials. The record includes Wells' discovery request and his counsel's letter to the prosecutor, both dated well in advance of Wells' trials. Wells' counsel also alleges that he made a verbal request for the roster. In addition, Wells contends, and the government does not dispute, that after the prosecutor spoke with an

4

official at Lorton Reformatory, he told Wells' counsel that no roster existed. Only after being served with a subpoena right before Wells' second trial did Lorton Reformatory turn over the roster.

The government has offered no explanation for its failure to respond to Wells' timely requests. It argues, however, that we should find that Wells was not diligent because he waited until May 17-- over a month after the first trial--to apply for a subpoena. As noted above, Wells' counsel first requested the roster in February, soon after Wells' arraignment. In response to this request, the government told Wells' counsel that the roster did not exist. In addition, Wells' subpoena requested the roster by May 25, which was almost two weeks before Wells' second trial. This would have been sufficient time for Wells' counsel to conduct his investigation. Delays in service of the subpoena and delivery of the roster, however, foreclosed any opportunity for investigation. We therefore decline to accept the government's argument.

Not every inability to produce potential witnesses requires a continuance. But a prejudicial circumstance is introduced when a government agency obstructs a defense counsel's investigation. This is especially true when the obstruction can be removed by granting a short continuance. The situation becomes more troubling when the record discloses that the witnesses were sought to support the charge that an employee of the agency was guilty of misconduct. The Supreme Court put the matter of continuances in proper perspective in Ungar v. Sarafite, 376 U.S. 575, 589 (1964):

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (citations omitted).

5

Applying the commonsense observations of the Court in Ungar, we conclude that under the circumstances the district court's denial of Wells' motion for a continuance was erroneous and was prejudicial to Wells' case.

III

In its cross-appeal, the government contends that the district court erred when it departed downward.

At Wells' sentencing hearing the district court determined, and Wells did not dispute, that Wells was a career offender under U.S.S.G. § 4B1.1. The sentencing range was therefore 210-262 months. However, the court declined to sentence Wells within the career offender range, determining that the Sentencing Commission could not have intended to impose such a disproportionately long sentence for the possession of such a small amount of drugs. Accordingly, the court departed downward and set the sentencing range at 41 to 51 months, the range that would have applied if Wells had not been a career offender. The court sentenced Wells to 41 months.

In United States v. Brown, 23 F.3d 839, 842 (4th Cir. 1994), we examined a situation similar to the one at hand in which the district court had departed downward from the career offender range after determining that the amount of drugs involved in the defendant's predicate offenses did not warrant the application of the career offender range. Applying a de novo standard of review, we concluded that, in accordance with its congressional mandate, the Sentencing Commission had adequately considered drug quantities when formulating the career offender guideline. Brown, 23 F.3d at 841-42.

We hold that there is no reason to distinguish the present case, in which the district court focused on the small amount of drugs involved in the charged offense, from the one in Brown. In either situation, "[a]llowing individual district judges to decide what amount of drugs is small would undermine the consistency goal; what is small to one judge may not be so small to another." Brown, 23 F.3d at 842.

6

We reverse the district court's judgment and remand for a new trial in a manner consistent with this opinion.

REVERSED AND REMANDED

WILLIAMS, Circuit Judge, dissenting:

Because I disagree with the majority's conclusion that the district court abused its discretion in denying Wells's motion for continuance, I respectfully dissent. In my view the majority has labelled an "abuse of discretion" the district court's justified refusal to delay Wells's second trial for the purpose of allowing defense counsel to conduct a fishing expedition for potential witnesses.

The challenged search occurred in the shower facility of a dormitory at the Lorton Reformatory. The Government contended at trial that Wells had attempted to rid himself of a glove containing heroin and currency by throwing it over the wall of the shower area, where it was retrieved by Officer Sailor. Wells maintained that the contraband was planted by Officer Sailor in collusion with the officers conducting the search. In support of this defense at his second trial, Wells offered his own testimony and the testimony of two purported eyewitnesses. Fellow inmate Dorian Jones testified that he was with Wells in the shower area when the strip search was conducted and that Wells did not throw anything over the shower wall. [1] Another inmate, Leroy Copeland, testified that he observed Officer Sailor remove something from his pocket as he walked toward the showers. Evidently disbelieving Wells's version of events, the jury convicted him.

A district court is afforded broad discretion in matters relating to the scheduling of trials; absent an abuse of that discretion, the denial of a motion for continuance will not be reversed. See Morris v. Slappy, 461 U.S. 1, 11-12 (1983); United States v. LaRouche, 896 F.2d 815, 823 (4th Cir.), cert. denied, 496 U.S. 927 (1990). The denial of a motion for continuance constitutes an abuse of discretion when it indicates "a myopic insistence upon expeditiousness in the face of a justifiable request for delay." Ungar v. Sarafite, 376 U.S.

_____

[1] Jones subsequently pled guilty to making false statements during Wells's trial.

7

575, 589 (1964). In addition to showing that the denial was wrongful, the defendant must show specific prejudice resulting from the denial. LaRouche, 896 F.2d at 823.

When a motion for continuance is based on a defendant's need to secure the attendance of a witness, the law of this circuit requires the defendant to identify the witness, make a proffer of the witness' testimony, show that the witness can be obtained if the requested continuance is granted, and show that due diligence has been employed to obtain the witness in time for the trial as scheduled. United States v. Clinger, 681 F.2d 221, 223 (4th Cir.), cert. denied, 459 U.S. 912 (1982). The majority would excuse Wells from the first two of these requirements on the basis that "this is an unusual situation." Majority Op. at 4. I do not believe that the situation before us is so unusual that it warrants disregarding the relatively minimal burden the district court placed on Wells. Assuming Wells could not identify potential witnesses by their actual names and inmate identification numbers without the roster, I do not think that the district court acted unreasonably in asking Wells to identify, at least by nickname, those individuals who were in a position to view the actions of Officer Sailor. After all, Wells lived with his fellow inmates, in relatively close quarters, twenty-four hours a day, seven days a week. As the district court rightly pointed out, Wells himself was in the best position to know which inmates could have observed Officer Sailor's actions. In spite of this fact, and in spite of the fact that Wells called to testify two fellow inmates -- at least one of whom, Copeland, should have been able to tell Wells whether other inmates were in a position to observe Officer Sailor -- Wells has failed to identify even one potential witness other than the two fellow inmates called at his second trial.

Furthermore, I am not convinced that Wells demonstrated due diligence in his efforts to obtain the roster of inmates. Wells's counsel did not subpoena the roster until three weeks before the second trial and more than one month after the second trial had been scheduled.[2] Were the roster as vital to his defense as Wells contends, one must wonder why his counsel did not issue the subpoena in advance of the first trial. The district court was entitled to consider this fact in ruling

_____

[2] Of course, I do not condone the marshal's delay in serving the subpoena.

8

on the motion for continuance. See Ungar, 376 U.S. at 589 (noting that decision to grant or deny motion for continuance should be based on all of the circumstances).

Even if the district court's denial of the motion for continuance was wrongful, Wells cannot show that he was prejudiced thereby. Despite repeated opportunities to do so, Wells has utterly failed to identify, even by nickname, any potential defense witness that he has not already called.[3] Wells's unsupported assertion that interviews of all of the inmates on the roster may result in the discovery of more witnesses -- whose testimony, in any event, would merely have been cumulative of the testimony of other defense witnesses -- does not constitute a showing of prejudice. See United States v. Badwan, 624 F.2d 1228, 1231 (4th Cir. 1980) ("We must be reluctant to find arbitrariness in the exercise of trial court discretion based upon no more than post-hoc assertions by counsel that given more time something might have turned up."), cert denied, 449 U.S. 1124 (1981).

Accordingly, I dissent.

_____

[3] Even now, when he is in possession of the roster, Wells has failed to identify any of the listed inmates as a potential witness.

9